WILLIAM G. CHAFFEE *vs.* BOSTON & LOWELL RAILROAD
CORPORATION.

If at a railroad station the direct and usual course for passengers to reach from the station-
house cars waiting to receive them is by crossing one of the tracks, they have a right to
rely, to some extent, for their safety in crossing, upon proper and usual signals of warn-
ing to be given by trains or cars approaching upon it.

The fact that a person who, in attempting to cross a railroad track, does not, at the instant
of stepping on it, look to ascertain whether a train is approaching, is not conclusive of a
want of due care on his part.

At a railroad station, the direct and usual course for passengers to reach from the station-
house trains going northward was by crossing a platform eight feet wide, and then one
of the tracks    Upon the arrival at this station of a train going northward, between
quarter and half past five o'clock on a dusky afternoon about the middle of November, a
passenger, on his way to it from the station-house, walked diagonally across the platform
some thirty feet, to the outer edge of the platform, looking meanwhile up and down the
track to ascertain if a train or car was approaching upon it, and then stepped upon the
track without so looking at the moment, and was instantly struck and injured by a hand-
car which was passing southward over the track at a speed of more than ten miles per
hour.   His view northward, along the track, as he walked across the platform, extended
only to a point from forty to forty-five feet north of the place where he stepped from the
platform.   There were no lights on the hand-car, nor any at the station except from the
train which he was endeavoring to reach, and from two lanterns on a post at the point
which bounded his northward view; and no signal of warning was given to him except
simultaneously with the collision.   *Held,* that the question whether he used due care was
for the jury, in an action by him against the railroad corporation to recover for his inju-
ries as caused by their negligence.

TORT for personal injuries sustained by the plaintiff by being
run over by a hand-car on the defendants' railroad track at Milk
Row station in Somerville, and alleged to have been caused by
their negligence.

At the trial in this court, before *Morton,* J., the plaintiff testi-
fied that, soon after five o'clock on the afternoon of November
13, 1867, he was waiting, as a passenger, in the passenger-room
of the defendants' station-house at the Milk Row station, for
the arrival of their train from Boston, on which he was intend-
ing to travel to Winchester, having a season ticket from the de-
fendants which entitled him to daily passages between Boston
and Winchester until January 1, 1868; that there was a double
track at the station, and the trains running north from Boston
(that is to say, from Boston to Winchester) passed over the

track furthest from the station-house, and in order to reach them from the station-house it was necessary to cross over the intervening track; that the station-house was thirty-five feet long, and the door opening from the passenger-room to the platform was eight or ten feet from the north end of the building; that the platform was eight feet wide, the space between the outer edge of it and the first rail of the nearest track eighteen or twenty inches wide, the guage of the tracks four feet and eight inches, and the space between the tracks along the front of the station-house about six feet wide; that the train was due from Boston from twenty to twenty-five minutes past five o'clock, and this evening was on time; that he heard the noise of its approach, and, with the other passengers, six or seven in number, stepped to the door of the passenger-room, and when he reached that door the train had stopped, the engine of it resting near a bridge thirty-five or forty feet north of the station-house; " that there were two lanterns on a post seven or eight feet above the fence north of the station, used as a target to stop the trains; that after leaving the door he walked diagonally down and across the platform, partly turned down the track towards Boston ; that he looked both ways to see if the track was clear, and could see nothing, stepped off the platform, and was struck by he did not know what, and was afterwards carried into the station." On cross-examination, he testified " that he heard no one call out to him before he was struck; that no one took hold of him while on the platform ; that the lights he alluded to as on the fence were about thirty feet above him ; that he looked up and down when he was walking on the platform from the door of the station to where he stepped off the platform ; that he could see up the track towards Winchester as far as the lights; that he saw no one step off the platform before him; that the station-master was in the room when he left it ; that when he went out of the station he looked up and down the track, and looked up and down when crossing the platform ; that when he stepped down from the platform he did not look up or down the track ; and that he went down the platform from the door at his usual gait, to the end of the platform, where he stepped off, not fast— had time enough."

Andrew F. Arnold, a witness for the plaintiff, testified that he was one of the passengers who were waiting with the plaintiff to take the train; " that he went out first, and the plaintiff came out very soon afterwards; that the train had stopped before the plaintiff left the station; that the engine of the train was between the station and the bridge over the track above the station ; that the plaintiff went across the platform angling towards Boston ; that he looked up and down the track; that the witness was looking for the engine, and saw the hand-car passing him on the down track from towards Winchester; that it was going very fast, twelve or fifteen miles an hour; that no notice of it was given, and there was no light upon it; that it was quite dusky, being cloudy ; that the hand-car struck the plaintiff on the back of his leg; that the witness did not think the plaintiff saw the hand-car, his back was towards it; that the car went on twelve or fifteen feet after it passed him before it hit the plaintiff; that he called out to the plaintiff as he was stepping off the platform, but he did not hear ; and that no one was near him or took hold of him."    On cross-examination, he said " that he was from twenty to twenty-five feet from the plaintiff when the car struck him ; that he saw the hand-car from twenty to twenty-five feet before it struck the plaintiff; that he called out to the plaintiff as he stepped off, as did some one in the hand-car; that the witness could see the plaintiff, and if the plaintiff had looked he could have seen the car as far up the track as to the lights; that, as the plaintiff came out of the door of the station, he cast his eyes both ways ; that the hand-car kept on from a hundred and fifty to two hundred feet, after it struck the plaintiff, before it was stopped; and that the plaintiff, as he came out of the door of the station-house, could not see up the track towards Winchester more than twenty to thirty feet, not above where the lights were."

Charles Leonard, another witness called by the plaintiff, testified that, at the time of the accident, he was in the employment of the defendants as a repairer of tracks from Somerville to Medford, about four miles, and for that purpose used the hand-car, and that he and two other men were on the hand-car when

it struck the plaintiff; "that one of the two and himself were turning the crank; that they were going as fast as they could till within a hundred feet of the place where the plaintiff was struck; that the brake was out of order, so they could not stop the car, and the defendants' head-mechanic, as also the head-repairer on that station, knew of it for about two months; that the car kept on a hundred and fifty to two hundred feet after it struck the plaintiff; that the witness shouted at the plaintiff, but the plaintiff did not hear; that he saw the plaintiff step right off the platform, and before the car; and that there was no light on the car."

Stuart French, also called by the plaintiff, testified that he came from Boston on the train which the plaintiff intended to take; that it had come to a full stop, and he was stepping off the cars on the side next to the station-house when he saw the hand-car come down the track and strike the plaintiff; that the plaintiff was opposite the lower or southern end of the station-house, and the witness was four or five feet from him. On cross-examination, he testified that he saw the hand-car about half a rod before it struck the plaintiff; that the collision was opposite the lower end of the station-house, and he was opposite the point where it took place.

Samuel Paine, also called by the plaintiff, testified " that he was walking towards the station, on the night of the accident, between the railway tracks; saw the plaintiff when he was struck by the hand-car, and was twenty to twenty-five feet below him, towards Boston, between the tracks; that he saw the plaintiff walking towards him across the platform diagonally from the door of the station-house; that the plaintiff stepped off the platform opposite the lower end of the station-house, that the hand-car was going ten or twelve miles per hour, and went on, after the collision, a hundred and fifty to a hundred and eighty feet before it stopped." On cross-examination, he said "that he saw the plaintiff making across the platform, and sang out to him to look out just as he was in the act of stepping off; that there were six or eight persons on the platform; and that it was light enough for him to see where the hand-car stopped."

" It was admitted that the plaintiff was a season ticket pas-senger, and entitled to the rights of such passenger; and it was not claimed that he was notified of the approach of cars by the station-master, or that it was usual to give such notice."

" Upon the close of the plaintiff's testimony, the defendants' counsel asked the judge to rule, as matter of law, and so in-struct the jury, that the plaintiff had not shown himself to be in the exercise of due care at the time he received the injury he sought to recover for, and so was not entitled to recover, as his own want of due care contributed to the accident. The judge declined so to rule; but ruled that upon the evidence in the case the jury were to judge whether the plaintiff, when he re-ceived the injury complained of, was in the exercise of due care. The defendants then put in evidence that did not materially vary that offered by the plaintiff, as to the question of his being in the exercise of due care; and again renewed their motion for an instruction to the jury that the plaintiff was not entitled to recover, on the ground that he was not in the exercise of due care at the time he received the injury he sought to recover for, which the judge declined to give.

" Among other instructions given to the jury, not excepted to, upon the subject of the plaintiff's being in the exercise of due care at the time he received the injury, the judge instructed them that, to entitle him to their verdict, the plaintiff must sat-isfy them that when he received the injury he was in the exer-cise of due care himself and his want of it did not contribute to his injury; that it would not be due and proper care on his part, if he should have left the station on the occasion in ques-tion and attempted to cross the track without looking to see whether it was clear or not; but that, upon the evidence in this case, it was for the jury to determine whether the plaintiff, at the time he received the injury, was acting as a man of ordinary prudence and care would have acted under like circumstances; and if they were satisfied that he did so act on this occasion, then it would be due care on his part. After the charge to the jury, the defendants requested the judge to instruct the jury as follows, upon the point of the plaintiff's being in the exercise

of due care at the time he received the injury complained of: ' That, when a person steps upon a railroad track, the law requires him to show affirmatively that he was at the time in the active exercise of such care as would satisfy a reasonable man that he could step upon the tracks with safety; and if, at that time, there is an absence of affirmative care and thought, the plaintiff cannot recover.' This instruction the judge declined to give, having already charged the jury upon the subject embraced in the request." The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*J. G. Abbott*, for the defendants. Taking the plaintiff's evidence as true, it does not show that he used due care. In crossing a railroad track, which may be used by trains or cars, although carelessly, at any time, and where to look up and down before stepping upon it is all that is required to ascertain if it can be crossed safely, no person can be said to be careful, or other than positively careless, who steps upon it without looking, and is struck by an approaching train or car. If, in such a case, at the moment when he steps on the track, (the only time when care is necessary,) the passenger does not use his sight and hearing to determine whether the track is free and safe, he cannot be said to be using any care at all. The substance of numerous decisions of this court is, that, as matter of law, it is not due care for any person to enter upon a railroad track without using all his senses, at the very time of so doing, to ascertain if it is safe. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227. *Butterfield* v. *Western Railroad Co.* 10 Allen, 532. *Bancroft* v. *Boston & Worcester Railroad Co.* 97 Mass. 275. *Forsyth* v. *Boston & Albany Railroad Co.* 103 Mass. 510. See also *Steves* v. *Oswego & Syracuse Railroad Co.* 18 N. Y. 422. In *Warren* v. *Fitchburg Railroad Co.*, the court held that it was the fact that the plaintiff, while waiting as a passenger to take the train, was told by the defendants' station-master to cross the track, and was doing so in obedience to that order, which took the case out of the ordinary rule and justified the submission of it to the jury.

The testimony in the case at bar shows that the plaintiff did not, immediately before entering on the track, look to see if it was safe for him to do so; and that, if he had looked, he might have seen the hand-car and avoided it. The station being thirty-five feet long, and the lights seven or eight feet above a fence north of the station, he must have been able to see more than forty feet, at least, up the track, from the place where he stepped off; and it is therefore certain, not only that he did not look up the track, with a view to ascertain if it was safe, at the moment when he attempted to cross it, but also that he had not looked up towards Winchester for some little time; since, after such looking, the hand-car must have had time to pass over a distance of more than forty feet. And if, as was contended, the plaintiff could not see up the track further than the lights, that is, from forty to forty-five feet, then there was so much the more reason for him to look immediately before entering upon it, as he must have known how quickly a train or car may pass over such a space. *Bancroft* v. *Boston & Worcester Railroad Co.* 97 Mass. 275. The ruling of the judge permitted the jury to find that, if the plaintiff looked at the moment he left the station-house, and at no other and later time, it was due care on his part; that is, that he might walk down the platform twenty-five or thirty feet with his back towards one point from which a train might approach, and attempt to cross the track without looking in that direction after leaving the station-house, although at the point at which he left the station-house he could only see fifteen or eighteen feet up the track. Such conduct on the part of the plaintiff was not only, as matter of law, want of due care, but, as a practical question to be determined by the common sense and experience of men, it was grossly careless.

The instruction specially asked for was applicable to the testimony and should have been given. The plaintiff was bound to prove that, when he was injured, he was in the exercise of affirmative care commensurate with the exigency of the case; not that he had been careful at some time before, and was giving no attention to the matter when he received the injury. Here, under the instructions given, the jury were only told that

it would not be due care if the plaintiff left the station-house, and attempted to cross the track without looking to see if it was clear; no instructions being given to govern them in determining at what place or at what time he must look. They should at least have been instructed that the care of a reasonable man was required of the plaintiff when he entered upon the place where he was exposed to danger. *Gilman* v. *Deerfield*, 15 Gray, 577.

*G. A. Somerby*, for the plaintiff.

COLT, J. The plaintiff must show, by positive evidence, in cases of this description, that he was in the exercise of due care, and that his want of it did not contribute to the injury of which he complains. If, as a matter of common knowledge and experience, the court can see that, upon all the undisputed facts, the plaintiff was not in the exercise of ordinary care, and that the injury he received was in part attributable to his want of it, the jury may be properly told, as matter of law, that he cannot recover. But the question of ordinary care is, in most cases, even where the facts are undisputed, a question of fact, which it is peculiarly the province of the jury to settle, under proper instructions.

A person who attempts to cross a railroad track, under any circumstances, can hardly be said to be in the exercise of due care, unless he takes reasonable precaution to assure himself, by actual observation, that there are no approaching cars upon it. But the degree of caution he must exercise will be affected by the situation and surrounding circumstances. If he is a passenger passing from the station-house in the direct and usual course to enter cars which are waiting to receive passengers, and obliged by the location of the tracks to pass over a track that is unoccupied, he has a right to rely to some extent upon proper and usual signals of warning, to be given by trains or cars passing the unoccupied track at such a place and under such circumstances.

In the case at bar, the plaintiff was a passenger, and the defendants were bound to afford the security and protection to which he was entitled in that relation. The arrangement of the

defendants' station-buildings and tracks was such that he was obliged to pass over one track to reach the train he was to take. There was no other way of access to the cars. He testified that, while walking from the door of the passenger-room to the place where he stepped from the platform, he looked up and down the track to see if it was clear, and saw nothing; that the night was dark, and, immediately after stepping from the platform upon the track, he was struck and injured by a passing hand-car, which had no light upon it.

There is evidence in this, that the plaintiff, in the act of crossing, was thoughtful of the danger to which he was exposed, and was in the exercise of some degree of care with reference to it. Whether it was due care under all the circumstances, applying as the measure of due care the rule that it must be such care as men of common prudence usually exercise in positions of like exposure and danger, was a question for the jury. It cannot be maintained, as matter of law, that the plaintiff was negligent in not looking up and down the track at the moment when, in a dark night, he stepped from the platform upon it. He had assured himself shortly before, by looking each way, that there was no car approaching which would make the crossing hazardous. His attention, with due regard to his own safety, may have been properly turned for the instant, to see if there was any obstruction before him on the track, or excavation in his way, or danger of collision with other passengers passing to or from the cars. *Gaynor* v. *Old Colony & Newport Railway Co.* 100 Mass. 208. *Warren* v. *Fitchburg Railroad Co.* 8 Allen 227. *Forsyth* v. *Boston & Albany Railroad Co.* 103 Mass. 510.

*Exceptions overruled.*