JACOB FUSILI, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 25, 1891.

1. Railroads: CONTRIBUTORY NEGLIGENCE: LOOK AND LISTEN. One who is about to cross a railroad at a street or public crossing must look and listen for a train, where, by listening, he can hear, and by looking he can see, an approaching train; and the omission of either would be such negligence on his part as to prevent a recovery.

2. ———— : NEGLIGENCE : TRAIN ON TRACK : PRESUMPTION AS TO SIGNAL. Where one about to cross a railroad sees a train standing on a track, he has the right to assume that some signal will be given, before it is moved.

Fusili v. The Mo. Pac. Ry. Co.

3. ————: NEGLIGENCE : FLAGMAN'S SIGNAL : JURY QUESTION : ESTOP-PEL. Though one about to cross a railroad crossing, where a flag-man is stationed, sees, or could see, the train on the track moving toward him, yet, if he is signaled by the flagman to cross, he has a right to presume from the request of the flagman to come on that the train would not move over the crossing while he was in the act of diligently complying with the request. The question whether on the facts in this case the plaintiff was induced to attempt the crossing was a question for the jury, and not for the court. If defendant's negligent conduct occasioned the conduct of plaintiff, in a certain sense it ought to be estopped from claim-ing plaintiff's conduct was negligent.

4. Trial Practice : DEMURRER TO EVIDENCE. Where the facts are either disputed, or different inferences may fairly be drawn from the undisputed facts, the question of negligence should be sub-mitted to the jury.

5. Railroads : EVIDENCE : NEGLIGENCE : ORDINANCE AS TO FLAGMAN. Though an action for negligence in injuring plaintiff by the man-agement of a train is not based on a city ordinance requiring the stationing of a watchman at a certain crossing and prescribing his duties, and said ordinance furnished no cause of action, still, the existence of such ordinance was a fact bearing upon the conduct of the managers of the train, and is proper evidence tending to support the general allegation of negligence.

6. ————: PLAINTIFF'S PHYSICAL INFIRMITY : RULE OF CARE : INSTRUCTION. An instruction, if plaintiff, on account of an obstruction or loss of an eye, could not, from where he stood, see the approaching train, then it was his duty to get where he could have an unobstructed view, if there was such a place in the street, and look up and down defendant's track before attempting to cross the same, and if he failed to get an unobstructed view, when he could have done so, and to look up and down the track, and, by so doing, he could have avoided the injury, then such failure was negligence, which would preclude his recovery, is proper on the facts of this case. Plaintiff's physical infirmity formed a portion of the circumstances which were to determine whether ordinary care was exercised by him ; and such physical infirmity imposed the duty of increased vigilance in the employ-ment of his remaining faculties.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*McDougal & Robinson,* for appellant.

(1) Defendant's instructions in the nature of demurrers to the evidence should have been given. The plaintiff's negligence directly contributed to his injury. He could have seen the moving car if he had looked, heard it if he had listened, and was reckless in trying to go across the track before the car. (2) The city ordinance contained three of the essential facts constituting plaintiff's cause of action. No foundation was laid in the petition for such evidence, and it was error to admit it. *Pier v. Heinrichoffen,* 52 Mo. 333; *Lanitz v. King,* 93 Mo. 513, and cases cited. (3) Defendant's tenth instruction should have been given. If plaintiff, on account of the loss of his left eye, or on account of any obstruction, could not, from where he stood, see the approaching train, then it was his duty to get in such position that he could see before attempting to cross the track.

*Sherry & Hughes,* for respondent.

(1) By introducing evidence for defense the defendant waived all point on the demurrer to the plaintiff's case. *Brown v. Railroad,* 95 Mo. 268; *Gunther v. Railroad,* 95 Mo. 286. (2) Defendant's instruction, numbered 10, was properly refused. *Kellny v. Railroad,* 101 Mo. 67; *Schlereth v. Railroad,* 96 Mo. 509; *Eswin v. Railroad,* 96 Mo. 290; *Kelly v. Railroad,* 70 Mo. 604; *Smith v. Railroad,* 61 Mo. 588; *Meyer v. Railroad,* 40 Mo. 151; *Railroad v. Stegmeier,* 20 N. E. Rep.'843; *Guggenheim v. Railroad,* 33 N. W. Rep. 161. (3) The ordinances were properly admissible, under a general allegation of negligence, and it was not necessary to plead them. *Robertson v. Railroad,* 84 Mo. 119 and 121; *Judd v. Railroad,* 23 Mo. App. 56; *Riley v. Railroad,* 18 Mo. App. 385; *Hutton v. Railroad,* 22 Mo. App. 328; *Railroad v. Stegmeier,* 20 N. E. Rep. 843.

SMITH, P. J.—This was a suit to recover damages for personal injuries. The evidence tended to show that, at the crossing of Hickory street, which runs north and south, and Union avenue, which runs east and west, in Kansas City, there are on the latter four parallel railroad tracks, running nearly east and west; the two north tracks were owned and operated by defendant; the other two by other railroads. North of these four tracks, and on the east side of Hickory street, were the railroad tracks, houses, sheds, etc., of the Bolen Coal Company. About midday on August 24, 1888, when the weather was clear and bright, the plaintiff, driving his one-horse wagon southward on Hickory street, came to this crossing, and found his further passage obstructed by a freight train passing eastward on the south track. He was, and for a long time had been, perfectly familiar with this crossing. He stopped and waited until that east-bound freight passed as did many others; some going north, others south. There was at the time a freight train of defendant standing on one of the north tracks, the engine of which was east and the rear car of which was on or near the crossing. The evidence of the plaintiff, while in some respects in conflict with that of the defendant, tended to show that the flagman of defendant, stationed at the crossing, after the train going east had passed, motioned the plaintiff to cross, and that plaintiff thereupon started to cross the railway tracks, and in so doing was struck by a kicked car from the east, which was on the second track, and which threw plaintiff out and demolished his wagon. The last-mentioned freight train had pulled up going eastward until that car stood nearly half its length in Hickory street, and partly on the crossing in question. While there, this car was cut off from the train; it was the intention to run it back westward onto the switch, and a signal was given to back up the train for this purpose. The engineer backed up very slowly; the plaintiff tried

to get across, but did not do so in time, and the car struck the wagon, went a few feet further and stopped.

There was no obstruction, and plaintiff could have seen if he had looked, and heard if he had listened, this car as it slowly moved backward. The court permitted plaintiff, over the objection of the defendant, to introduce an ordinance of the City of Kansas requiring every railroad using the tracks at said crossing to keep a watchman stationed there, whose duty it was declared to be " by day and by night to notify all persons about to cross the railroad track, of the approach of any railroad locomotive, tender or car. The plaintiff had judgment, and the defendant appealed.

I. The first error assigned is, that the trial court erred in refusing the defendant's instruction in the nature of a demurrer to the evidence. The grounds upon which this contention is based are, that the plaintiff's negligence directly contributed to his injury. In order to avoid the plea of negligence on the part of the plaintiff contributing to the injury, it was essential that he should show that in attempting to go over the crossing that he himself exercised due care. The law enjoined upon him the duty of watchfulness and vigilance. He was bound to use his eyes and ears, so far as there was an opportunity. It is the well-settled rule of the law in this state, that one who is about to cross a railroad at a street or public crossing must look and listen for a train, where by looking he can see, and by listening he can hear, an approaching train, and the omission to do either would be such negligence on his part as to prevent a recovery. *Donohoe v. Railroad*, 91 Mo. 357 ; *Hanlan v. Railroad*, 64 Mo. 480; *Fletcher v. Railroad*, 64 Mo. 484 ; *Henze v. Railroad*, 71 Mo. 636 ; *Zimmerman v. Railroad*, 71 Mo. 476 ; *Stepp v. Railroad*, 85 Mo. 229. If the plaintiff had taken the precaution to have looked eastward on the track, and had seen the train standing there, he had the right to assume that some signal would be given before it would be

moved westward and backward. *Wilkins v. Railroad*, 101 Mo. 93 ; *Meek v. Railroad*, 38 Ohio St. 632 ; *Cornell v. Railroad*, 38 Iowa, 120. No signal or warning was given, nor was anyone placed on the rear car to keep a lookout, or to apply the brakes while approaching the crossing. He could not know by the exercise of his senses that the rear car of the train would be kicked back over the crossing from the point where it had stopped. Besides this, there was evidence tending to show that, when the plaintiff started to go over the tracks with his wagon, it was in obedience to a signal from the defendant's flagman that there was no hinderance to his safe passage. While no express intimation was shown, the signal of the flagman was an act that spoke as loud and plainly as any words for that purpose would have. No reason is perceived why this invitation from the flagman to plaintiff would not absolve the plaintiff from taking further precaution before attempting to cross the track. It is true, he saw, or could have seen, if he had looked, the train of cars on the track to the east of the crossing, moving westward, but he had a right to presume from the request of the flagman to come on, that the train would not move over the crossing while he was in the act of diligently complying with his request. It is evident that the duty of the flagman under the ordinance introduced in evidence included the exercise of ordinary care in warning persons approaching or near the street crossing of any danger from passing trains. It would seem that under the peculiar circumstances of this case that, if the flagman invited plaintiff to cross the track at the time he attempted it, that he was, in consequence of that fact, relieved of the usual precautionary obligation to first look and listen. He had the right to assume that the slowly backing train would not encroach upon the crossing before he could pass over it himself. His attempt to cross under such conditions was in the exercise of due care. And the question, whether the plaintiff was

induced by the defendant's flagman to attempt to pass over the crossing, was a question for the jury, and not for the court. The court could not say, upon the evidence, as a matter of law, that the plaintiff had not exercised due care, or was guilty of contributory negligence at the time he received the injury complained of. Beach on Contrib. Neg., secs. 23, 64; Wharton on Neg., sec. 387; *Sweeney v. Railroad,* 10 Allen, 368; *Spence v. Railroad,* 8 Iowa (29 Stiles), 55; *Warren v. Railroad,* 8 Allen, 227; *Whitlock v. Railroad,* 105 Mass. 203; *Chaffie v. Railroad,* 104 Mass. 108; *Railroad v. Toffy & Hertog,* 38 N. J. Law, 525; Whitaker's Smith on Neg. 401.

There was evidence offered which shows that the defendant by its own negligent conduct occasioned the conduct of the plaintiff, and for that reason, in a certain sense, ought to be estopped from making the claim that plaintiff's conduct was negligent. We are all of the opinion that the court properly refused to withdraw the case from the consideration of the jury. The rule is, that, where the facts are either disputed or different inferences may be fairly drawn from the undisputed facts, the question of negligence should be submitted to the jury. *Huhn v. Railroad,* 92 Mo. 440; *Nagle v. Railroad,* 75 Mo. 653; *Mauerman v. Railroad,* 71 Mo. 101.

II. The second error assigned is, that the court improperly admitted in evidence the ordinance of the City of Kansas. Its contention is that these ordinances contained essential facts constituting plaintiff's cause of action when no foundation was laid in the petition for the admission of the same in evidence. This contention we do not think can be sustained. This action was not based on the ordinance. It furnished no cause of action, and for that reason it was unnecessary to plead its provisions. The existence of the ordinance was only a fact bearing upon the conduct of the managers of the

train, and whether the defendant was guilty of negligence at the time and place, resulting in loss to plaintiff, depends upon all the facts legally bearing upon their action. If the defendant was operating and moving its train in violation of law at the time, such fact is competent evidence in support of the charge of negligence. *Robertson v. Railroad*, 84 Mo. 119 ; *Judd v. Railroad*, 23 Mo. App. 56 ; *Riley v. Wabash*, 18 Mo. App. 385 ; *Nutter v. Railroad*, 22 Mo. App. 328 ; *Railroad v. Stegmeier*, 20 N. E. Rep. 843. The defendant contends that the cases just cited do not apply, for the reason that they originated before justices of the peace. But, as was said by Mr. Justice PHILIPS in *Judd v. Railroad, supra:* "We are unable to perceive any reason for the distinction suggested as to the different forms in which the action may be brought, when the ordinance is offered in evidence, not for the purpose of giving a cause of action based thereon, but merely as evidence tending to support the general allegation of negligence."

III. The defendant further complains of the action of the court in refusing to give its tenth instruction, which, in effect, declared that, if plaintiff, on account of an obstruction or the loss of an eye, could not from where he stood see the approaching train, then it was his duty to get where he could have had an unobstructed view, if there was such place in the street, and look up and down defendant's track, before attempting to cross the same, and that if he failed to get an unobstructed view when he could have done so, and to look up and down the track, and, by so doing, he could have avoided the injury, then such failure was negligence which would preclude his recovery. There was evidence tending to show that there was a train of cars standing on the north track of defendant's road, extending up to the crossing from the east, and that on the next or second track was the train, the hindermost car of which, while

being moved from the east, struck plaintiff's wagon. There was testimony to the effect that plaintiff, had he looked from the north side of the second track east, could have seen the approach of the train which collided with his wagon. Plaintiff, as, perhaps, for an excuse for not seeing the approach of the train, testified that he had lost his left eye, the one towards the moving car, and that it came up on the blind side of him. If the plaintiff was under the physical infirmity stated, that imposed upon him the duty of increased vigilance in the employment of the faculties he possessed. The general rule is, that physical infirmities of themselves do not constitute a defense for the failure to exercise ordinary care under given circumstances. When one is conscious that his hearing or his sight is defective, instead of exercising less, he should rather exercise greater, care in other respects. If the plaintiff had lost one of his organs of sight—if his sense of sight was impaired—it would seem that common prudence would have required that he should have exercised greater care, before attempting to pass over the railway crossing, than would have been required of one in the full possession of the faculty of sight. Persons laboring under physical disabilities are required to exercise what care they can up to the measure of ordinary care under the circumstances. Ordinary care required by this rule has not only an abstract, but also a relative, signification. It is to be such care as prudent persons are accustomed to exercise under the peculiar circumstances of each case. It is called into exercise under circumstances of peculiar peril—a greater amount of care is required than when the circumstances are less perilous, because prudent and careful persons, having in view the object to be attained and the just rights of others, are in such cases accustomed to exercise more care than in cases less perilous. The amount of care is increased, but the standard is still the same. It is still nothing more than ordinary care, under the circumstances of that particular case.

The circumstances, then, are to be regarded in determining whether ordinary care has been exercised. The physical disability of the plaintiff which prevented him from seeing to his left, and in the direction the car, which struck his wagon, was coming, was a part of the circumstances under which he attempted to pass over the crossing. The plaintiff's physical infirmity formed a portion of the circumstances which are to determine whether ordinary care was exercised by him. Beach on Contrib. Neg., sec. 147 ; 1 Thompson on Neg. 430 ; *Railroad v. Teller*, 84 Pa. St. 226 ; *Railroad v. Terry*, 8 Ohio St. 570 ; *Railroad v. Haslow*, 38 N. J. Law, 147 ; *Winn v. Lawd*, 1 Allen, 177 ; *City, etc., v. Krouss*, 64 Ill. 19 ; *Davenport v. Rinkman*, 37 N. Y. 568 ; *Sluper v. Sandson*, 52 N. H. 244. It follows from these observations that the rule enunciated in defendants' tenth instruction should have been given.

The judgment must be reversed, and the cause remanded. All concur.