# CHARLESTON

## BOWLES *v.* THE CHESAPEAKE & OHIO RY. CO.

Submitted January 10, 1907.   Decided February 5, 1907.

1.  RAILROAD CROSSING—*Accidents—Negligence per se.*

    It is negligence *per se* to back a train on a dark night over a public railroad crossing without warning, by blowing a whistle or ringing a bell or guard or light on the advancing reversed car. The company must adopt some means to warn travelers of danger, such means as will be equally efficient as the bell or whistle warning in the case of an advancing unreversed train. The precaution must suit the circumstances and be adequate under the circumstances. (p. 273.)

2.  RAILROAD CROSSING—*Reaching by Walking on Track.*

    Though one reach a public crossing over a railroad by walking on the right of way between tracks, though not between the rails, this does not deprive him of the benefit of the safeguards demanded of the company for a person while crossing the railroad on such public crossing. When on the crossing he is entitled to such safeguards, no matter whence he came or how he reached the crossing. (p. 278.)

Error to Circuit Court, Kanawha County.

Action by Rushia A. Bowles, administratrix, against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

SIMMS, ENSLOW & ALDERSON and R. M. BAKER, for plaintiff in error.

S. D. LITTLEPAGE and PAYNE & PAYNE, for defendant in error.

BRANNON, JUDGE:

John H. Bowles was killed by a train of the Chesapeake and Ohio Railway Company, and his widow and administratrix, Rushia A. Bowles, having recovered a judgment against the company for $6,500 damages, the company appeals.

Bowles and wife on a dark night, 19th January, 1904, were walking on the railroad right of way going to a restaurant at Lewis Crossing, which was a crossing of a public road over the railroad, Bowles walking not on the track, but in a space

of twelve feet between two tracks.    Bowles thus walked a quarter of a mile.    The restaurant was. on the public highway some fifty feet from the railroad track.    The highway crossing was thirty feet wide.    When Bowles got to the crossing he attempted to cross the railroad track, when he was struck by a train composed of a locomotive and caboose, which was backing across the highway.    A vital question in the case is whether Bowles when struck was within the limits of the public road crossing; for if he was not, he had no right to be there, and the railroad company was not bound to resort to care and signals to warn Bowles of danger, as he was a trespasser, not entitled to such warnings, and could recover only for gross negligence.    *Huff* v. *C. & O. Ry. Co.*, 48 W. Va. 45.    But if he had reached the crossing and was within its limits, a vastly different rule applies, as Bowles would then be lawfully on the track in effort to cross.    At crossings surely neglect of the company to adopt reasonable means to avoid injury to travelers is actionable negligence.    One who is himself without fault, injured at a crossing, and whose injury may be fairly charged to the negligence of the company, has right to recovery.    *Ray* v. *Railway*, 57 W. Va. 333.    Was Bowles when struck within the limit of the crossing?    Here the evidence is squarely conflicting. Several witnesses swear that he was struck within the road limit, and dragged on the ground some distance, while the conductor and brakeman say he was struck outside the road limit.    The fact that he was struck inside the crossing seems confirmed by the fact that the ground seemed swept as if by the body being dragged.    Another decisive fact is, that the blood and hair of Bowles were on the rail of the track inside the crossing. · A vital question of fact before the jury was whether Bowles was struck inside the limit of the crossing; it was a question of fact and depended on weight of evidence and conflicting evidence.    It is hardly necessary to say that a jury is the judge here.    We are bound to take the truth to be that Bowles was killed on the highway crossing, under the verdict.    Otherwise we would be acting the jury. Finding that Bowles had reached the crossing, we must inquire whether the company did those things required of it by law. If it did not, it is chargeable with neglect.    The Code demands that the whistle be blown or the bell on the locomotive sounded

at least sixty rods from a road crossing. Its omission is negligence. *Beyel* v. *Railway*, 34 W. Va. 538. This engine and caboose were standing 280 feet from the crossing. Evidence for the defense says that when starting to back over the crossing, three sharp whistles were blown. It is not claimed that any more sounds were made. When they were sounded another large train was passing, likely drowning the three whistle sounds. The statute does not say that the sound shall be kept up the whole sixty rods; but it does negative the idea that three short blasts will answer, as it says, "and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before a street or highway is reached." The very fact that the distance was so much less than sixty rods would seem all the more to require the warning kept up till the crossing was reached. Can it be said that the company was released from continuing the warning over the whole 280 feet by the fact that the blasts were sounded? It cannot be said that as the train was not distant sixty rods, the statute does not apply to the case. The statute demands this warning before crossing. The mere fact that the train has not that distance to go before reaching the crossing does not absolve it from adopting the warning for such part of that distance as is to be passed over. The train need not go back sixty rods to blow; but it must give the traveler the benefit of the safety-warning for such distance as is available. So, taking the defence's evidence I do not think it fairly complies with the demand of the law. The short blasts, and no further sound, were not a compliance with the plain meaning of the statute; did not furnish a warning reasonable under the circumstances, a train backing a very dark winter night. But here we meet conflict of evidence again, as several witnesses say that no whistle was blown nor bell sounded. This again a jury question. Furthermore. Here were an engine and caboose backing in deep darkness over a crossing. Was not great care required of the trainmen? The conductor says that he and the brakeman were on the rear platform of the caboose, with lanterns. The brakeman does not confirm this. He says he was on the end of the caboose next the engine. Here is conflict. But several witnesses swear that both men were on the caboose platform next the engine, not at all on the end which

struck Bowles. These witnesses say there was no one on this end of the caboose, and no light on it. There is evidence tending to show that lights called "markers," used to show that the train is the last, which would be on the end of the caboose, had been removed. The brakeman was heard to say so. When a train is backing cars over a street or road in the night, is not diligence demanded? It is much more dangerous than when the engine is ahead. We would be unwilling to say that the statutory warning by bell or whistle would be adequate in the case of a train reversed and backing over a crossing. That is designed for a train having the locomotive in advance. The warning is then on the first car approaching, whereas when the train is reversed, it is quite different. The distant bell or whistle would then furnish little safety. Wood on Railroads, 1517, says: "It is not necessarily negligence on the part of a railroad company to back and switch cars over a highway crossing, nor to make 'flying switches' there; it has a perfect right to make such a use of that part of the track, provided proper precautions are taken for the safety of travelers using the crossing. But as a matter of common knowledge such a practice is peculiarly dangerous, and therefore creates a duty of unusual care on the part of the company. There should be abundant warning, not only by the usual signals of bell and whistle, but there should be a flagman near the track, or a watchman on the nearest approaching car to warn travelers who are near. In this as in other cases the exact measure of the company's duty, and the question as to whether it has been discharged, is for the jury; though where a 'flying switch' is made over a crossing without any notice being given, and no watchman or flagman posted to give warning, it may be held as a matter of law that the company was negligent." Elliot on Railroads, section 1162, says that it has often been held that kicking or backing a car over a crossing without warning, and in the absence of a lookout, is negligence *per se;* that it is a true proposition in many cases, but not always; yet he grants that unless proper precautions are taken, it is negligence, and whether they have been taken is a jury question. This is an important matter for the safety of the public, for the preservation of human life, with which increased care or cost to a railroad company is

not to be compared. The precaution must be fair and adequate in the particular case. The case of *Vance* v. *Railway*, 53 W. Va. 338, sustains this position. Under the verdict on conflicting evidence we are compelled to find that these cars in darkness were backed rapidly over the crossing without any lights and without any one to protect crossers. The conductor says he hallooed at Bowles from the platform, but Bowles made no effort to save himself. The conductor says he saw him thirty feet away. He says the train was going six or eight miles an hour. He says the train could have been stopped in thirty or thirty-five feet, yet when asked why he did not stop it, answered, "It was done that quick," snapping his fingers. This shows the train was going fast, and evidence for the plaintiff so states; and that without any precautions. Our case of *Nuzum* v. *Railway Co.*, 30 W. Va. 228, certainly requires means of warning passers in public places. "To excuse a railroad company from suddenly and without warning backing a freight train against a person lawfully using a crossing, it must be shown that the person was guilty of some act of legal negligence, such as a person of ordinary prudence would not be guilty of under the circumstances." "A person using a public crossing over a railroad is not bound to assume that the company will negligently, without warning, back a motionless train against her." *Meeks* v. *Railroad*, 52 W. Va. 99, pts. 1 and 2, Syl. Has he not, on the contrary, right to assume that care will be used? The very fact that a sane, sober man, in the dark of night, does walk into the jaws of death under such circumstances as in this case, tells us that no lights, no alarm, were used. Would the disaster have happened if there had been signal lights, or alarm bell or whistle? Under the rule above put how can we find Bowles guilty of negligence? He attempted to cross. Without bell, whistle, light or warning the cars backed rapidly over the crossing. Bowles did not see the train down the track in the dark. He could not hear, as one of the trainmen said it made but little noise. And another long train had just passed on another track, and likely its noise was yet in Bowles' ears. If he heard train noise he would perhaps attribute it to that. No negligence is imputable to Bowles. The vital questions in this case are questions of fact to be determined on oral evidence,

and that conflicting, and dependent on credibility of witnesses. "The jury is the sole judge of the credibility of contradicting witnesses, and of the weight to be given to their testimony." *Young* v. *Railroad*, 44 W. Va. 218. If the plaintiff's evidence is credible, we do not see how the verdict could have been different.

The defense was refused the following instruction: "The court instructs the jury that the undisputed facts in this case show that Jno. H. Bowles was unlawfully walking on defendant's track for his own convenience in going to Wood's restaurant, and although he may have been struck on or near the crossing, yet his administratrix cannot recover damages for his death even if legal signals were not given nor lights displayed, unless you find from the evidence that after he was discovered on the track, the defendant's employees by the exercise of reasonable care could have avoided striking him." This assumes that the "undisputed facts" proved that Bowles was unlawfully walking on the track, when in fact he was not in the sense of one walking on the track over which cars run. but was walking on a space twelve feet wide between tracks over which trains moved. The instruction would make Bowles for that reason a trespasser to whom the railroad owed no duty on the crossing, under principles stated in *Huff* v. *C. & O. Co.*, 48 W. Va. 45. That rule does not apply to this case, as Bowles was killed on the crossing. He was not using the track as a footway as in the *Huff Case.* On that space Bowles was not a trespasser in that sense; he neither obstructed trains, nor was he in imminent danger like a walker on the track. He was a trespasser only in the sense of civil law making anyone a trespasser who enters another's close. The instruction is very misleading, as it would require the jury to place Bowles in just the same place, and guilty of the same culpable, gross negligence chargeable to one walking between rails, where the railroad would not be liable at all, unless the trainmen saw him and could be charged with gross negligence in failing to save him. And further it tells the jury that though Bowles may have been struck on the crossing, the fact that he had so walked on the track would exonerate the company from liability, even though no signals were given or lights displayed, unless after discovery of Bowles the employees by care could have avoided striking

him. This would say that for his past wrong in walking the track Bowles forfeited right to warning, even though he had reached "the City of Refuge," where the law would spread over others the ægis of protection by demanding certain warnings at crossings. I would hold that even if Bowles had been walking on the track, when he reached the crossing he ceased to be a trespasser. When he set foot in the crossing it became immaterial how he reached it, whether by coming off the track or from the county highway, because over the ground covered by the crossing the company was bound to furnish protection and safety, for all persons on it. Nobody claims that Bowles intended using the track beyond the crossing. Nobody says that he did not intend, if in the crossing, to use it to cross the track, as he would have had right to do, if he had reached the track by means of the highway. This instruction withdrew from Bowles, though on the crossing, and intending to use the track no further, all safe-guards given by law to those using crossings.

For these reasons we must affirm the judgment.

## ON REHEARING.

Upon a petition for rehearing it is proper to say, that the above opinion does not mean that one walking on a railroad's right of way, though not between the rails, is not a trespasser. The opinion says he is a trespasser; but it does not pretend to treat of injury received by one so walking, while there walking. We do not say what is the duty of the company, or what its liability under that state of facts. The opinion rests on the basis that Bowles, though he had been walking on the right of way, in the space between the tracks, had reached the crossing. The instruction would say that so walking made Bowles a trespasser so far that, even if he had reached the crossing, he was not entitled to the safeguards and warnings given by law to those using a crossing; it would impose this penalty, the loss of such safeguards and warnings, for the past wrong of Bowles in reaching the crossing by walking on the right of way. The above opinion was intended to show that his so reaching the crossing could not deprive him of the safeguards given by law to one on a public crossing. I repeat that it does not touch the question of liability for an injury received by one walking on the ground

of the company, though not on the track itself, as Bowles was not run over while walking in the space between the tracks, and the question of liability in such case is not involved. If any difference as to duty of the company to one not on the track, but on the right of way, as there likely is, it is in favor of the company. As to the claim that Bowles is not shown to have looked and listened. There is no evidence that he did not, or whether he did or not. The night was *dark*, and another train passing. "A railway company, backing a train across a public street or highway *in the dark*, is bound to give warning of its approach, especially where another train is passing over the same crossing on another track at the same time and in another direction." 2 Thomp. on Negligence, section 1571. It not appearing from the plaintiff's case that Bowles was guilty of contributory negligence in this respect, the burden of proof to show it rested on the defendant. *Sheff* v. *City*, 16 W. Va. 307; *Gerity* v. *Haley*, 29 *Id.* 98, 104. If it could be fairly found from the plaintiff's evidence that Bowles was thus negligent, there could be likely no recovery; but surely the jury could from the facts find that it did not so appear. Discarding the wife's evidence that he was looking in the direction of the train, we know he was walking in sober condition with eyes open in that direction, and we may fairly infer that he was *looking*, but for want of signal lights on the dark caboose could not *see* the train; and that for want of bell sound and because of the noise of the great freight train on an adjoining track, he did not *hear* the backing train, as its noise was not heavy. The very negligence of the trainmen caused him to fail to see or hear it. Was not the jury justified in saying they could not fairly find negligence in Bowles in failing to look and listen. To justify such finding of negligence the case must be clear. In fair probability, if the company had used ordinary care, that care required by law, the calamity to Bowles would not have happened. If there had been a man on the caboose to warn him; if even there had been lights on it, it is highly probable that it would not have occurred. So that I may cite, without strain, *Downey* v. *R. Co.*, 28 W. Va. 732, and *Richmond, etc.*, v. *Anderson*, 31 Grat. 812, holding that even where the plaintiff is chargeable with negligence contributing to the injury, yet if it could have been

avoided by ordinary care on the part of the defendant, such negligence will not defeat recovery. I suppose this rule is only to be applied where care would. have avoided the accident; but may we not say so in this case? In the first opinion I did not discuss the matter because it did not occur to me as important in the case, and does not now.

If we suggest that by being on the right of way and thus close to the noise of the passing freight train he disabled himself from *hearing* the other train, still he was entitled to lights on the backing train so that he could save himself by discovering it by sight. He had right to the help of both hearing and sight. He was also entitled to a bell sound on the backing train, as we do not know whether the freight was just there; indeed, as the evidence is that it just passed, we may say that a bell sound on the backing train would have warned him.

*Affirmed.*