FARLEY v. NORFOLK & W. RY. CO.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2469.

1. Railroads ⬤➔350(8).

Railroad's negligence in pushing cars over much used crossing without trainman on leading car to give warning, as required by rule, *held* question for jury.

2. Railroads ⬤➔327(1).

One who goes on track without looking or listening, and is injured by train which he should have seen, will be held guilty of contributory negligence.

3. Railroads ⬤➔331(3).

Duty of traveler to look and listen at railroad crossing *held* qualified, where watchman was standing between tracks with stop signal, as this was implied assurance of safety to such point.

**4. Courts ⏁406(1).**

On appeal from directed verdict for defendant, Circuit Court of Appeals must view evidence in light most favorable to plaintiff.

**5. Railroads ⏁350(29).**

Contributory negligence of pedestrian proceeding over crossing, when watchman was holding stop signal at another track, *held* question for jury.

**6. Railroads ⏁346(6).**

Presumption is that person killed by cars at crossing looked before stepping on track.

**7. Railroads ⏁350(33).**

Whether condition of negligent pedestrian might have been observed and injury prevented by proper lookout on cars backed across crossing *held* question for jury.

**8. Witnesses ⏁269(1).**

Cross-examination with certain exceptions should be limited to matters brought out on direct examination.

**9. Courts ⏁405(16).**

Circuit Court of Appeals cannot pass on exceptions as to exclusion of evidence, in absence of an avowal in record as to what excluded evidence would have been.

**10. Railroads ⏁347(11).**

Ordinarily evidence relative to railroad company's custom to have trainmen at front of car being backed across public crossing is admissible.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action by Celia A. Farley, administratrix of the estate of Harrison Farley, deceased, against the Norfolk & Western Railway Company. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for a new trial.

A. Henry Walter, of Washington, D. C., for plaintiff in error.

H. C. Duncan, Jr., of Huntington, W. Va. (F. M. Rivinus, of Philadelphia, Pa., and Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge. Harrison Farley was killed by cars of the Norfolk & Western Railway Company in a crossing accident at Kenova, W. Va., on October 30, 1924, and this action was instituted by his widow, as administratrix, to recover damages on account of his death, which is alleged to have been caused by the negligence of the defendant company. The parties will be referred to here in accordance with the positions which they occupied in the court below. The District Court directed a verdict in favor of the defendant, and the correctness of this ruling is the principal point raised by the assignments of error.

The deceased, Harrison Farley, was struck by the leading car in a string of five cars, which was being pushed along the city track of defendant and over its Fifteenth street crossing in Kenova. Fifteenth street runs north and south; the city track runs east and west. Immediately south of the city track is the belt line track of the defendant, from which the city track branches off approximately 25 feet west of Fifteenth street. Eighty-two feet south of the belt line track is the main line of the Chesapeake & Ohio Railway Company, just north of which is the passing track of the Chesapeake & Ohio. There are four railroad tracks, therefore, at this Fifteenth street crossing, which is shown by the evidence to be located only 75 feet from the City Hall, and to be the crossing principally used by the people of Kenova. The railway companies employ a crossing watchman, whose duty it is to watch the tracks, both of the defendant and the Chesapeake & Ohio.

At the time deceased received his fatal injury, a fast train of the Chesapeake & Ohio was passing over the crossing, on its main track, going in a westerly direction, at the rate of 50 miles an hour. The crossing watchman was standing about 15 feet north of the Chesapeake & Ohio tracks, and 50 feet or more south of the Norfolk & Western belt track, holding up a stop signal. Deceased was walking down the sidewalk on the west side of Fifteenth street going south. The evidence shows that he was 67 years of age, was "hard of hearing," and was totally blind in his right eye. Just as he reached the city track of the defendant, he was struck by the cars, which approached from his right. The cars were moving very slowly (about 2 miles an hour) and with very little noise, in an easterly direction. The bell of the engine was ringing, but the engine was behind the cars, five car lengths (more than 200 feet) away from the crossing and on the belt line track. The engine was more than twice as far from deceased as the fast train of the Chesapeake & Ohio which was passing at the time. There was no trainman on or preceding the leading car, although the rules of defendant introduced in evidence provided:

"103. When cars are pushed by an engine, except when shifting or making up

trains in yards, a trainman must take a conspicuous position on the front of the leading car.

"103 (a). Cars must not be backed or cut loose or allowed to run over a street, highway or private crossing, in yard or elsewhere, without a trainman on the front of or preceding the leading car."

Defendant brought out on cross-examination that deceased, was reeling or pitching forward as he walked, as though he were drinking or something were the matter with him; also that a brakeman of defendant, standing about 4 feet from the sidewalk and some distance south of the belt line, shouted to deceased as he was going upon the tracks. Another employee of defendant, who claimed to have been standing on the east side of Fifteenth street, testified that he saw that deceased was going on the track when he was 4 or 5 feet away, and shouted to him.

[1] The first inquiry is whether there was sufficient evidence to go to the jury on the question of negligence on the part of the defendant. We think that there was. Defendant was pushing cars ahead of an engine over a much used public crossing in the heart of the town, without having a trainman on the leading car or preceding it to give warning of their approach, although this was expressly required by its rules. No signals were being given except by the bell of the locomotive, which was on a different track, five car lengths away, and this was being done at a time when the attention of persons in the street might naturally be expected to be diverted by the passage of the fast train of the Chesapeake & Ohio on a nearby track, and when the crossing watchman, upon whose presence at the crossing the public would naturally depend for a warning of danger, was engaged at the Chesapeake & Ohio crossing. Upon this evidence, the issue as to negligence was one for the jury to determine. Waid v. C. & O. Ry. Co. (C. C. A. 4th) 14 F.(2d) 90, decided this term; Bowles v. C. & O. R. Co., 61 W. Va. 272, 57 S. E. 131; Chicago, R. I. & P. Ry. Co. v. Sharp (C. C. A. 8th) 63 F. 532, 11 C. C. A. 337; 33 Cyc. 1107.

The learned District Judge seems to have based his direction of a verdict upon the evidence that the two employees of defendant hallooed at deceased before he went upon the track, and upon the theory that this was a sufficient compliance with the duty imposed upon the defendant. We think, however, that this was peculiarly a question for the jury to decide. It is a fair inference from the testimony that the deceased, either did

not hear the shouts, or did not realize that they were intended as a warning of the approaching cars. Brakeman Smith, who shouted to deceased, was south of the track 10, 15, or 25 feet, according to the various estimates of witnesses. The other employee, who was not on duty at the time, shouted to defendant from the east side of the street. The rules of the defendant required that a trainman be stationed on the leading car, or that he precede same, to give warning of danger; and it is manifest that a warning given by a trainman so stationed, being given from the source of danger, would be more effective than the shouting of trainmen from other positions, which might serve to confuse, rather than to warn. In the case of a person struck by an automobile, it would hardly be contended that a shout by a bystander 25 feet away would take the place of a·signal by the person driving the machine. At all events, the violation of the rules having been shown in the backing of the cars, it was for the jury to say, under all the evidence, whether defendant had failed to use that degree of care for the safety of the public which reasonable prudence required, and, if so, whether such failure to use due care was the proximate cause of the death of deceased.

[2] It is urged, however, that we should affirm the judgment below, on the ground that the evidence conclusively showed contributory negligence on the part of the deceased. And, in this connection, the defendant relies upon the well-established rule that it is the duty of a traveler along a street or highway to look and listen for approaching trains before going upon a railroad track, and that one who goes upon a track without looking or listening and is injured by an approaching train or cars, which, in the exercise of due care, he should have seen and avoided, will be held guilty of contributory negligence as a matter of law. We have no disposition to question or qualify that rule which has been established by repeated decisions of this and other courts. We think, however, that the duty to look and listen was qualified by the circumstances appearing in this case, and that the failure of deceased to exercise due care for his own safety is not so conclusively established as to justify the taking of the case from the jury.

[3-5] The evidence is that a crossing watchman was provided at the crossing. This watchman was standing, not on the north side of the city track, to stop traffic from crossing that track in front of the backing cars, but 50 feet south of the belt line track,

and was holding up his stop signal, and was stopping traffic at that point. This action on the part of the watchman was a notice to persons using the street that the point of danger was the place where he had taken his stand and raised the signal. It was a warning to go no further, but an implied assurance of safety in going that far. Persons using the street had the right to assume that they might proceed in safety to the point where the warning signal was displayed. When thus viewed, and we must view the evidence in the light most favorable to plaintiff on a motion to direct a verdict, the evidence showed more than a mere absence of the watchman from the place of danger at the time the cars were being backed; it showed an implied assurance on the part of the watchman that it was safe to proceed over the crossing to the point where he had raised his warning signal. Under these circumstances, it was for the jury to determine, after due consideration of all the evidence, whether the deceased exercised that reasonable care which the law requires. Casdorph v. Hines, 89 W. Va. 448; 109 S. E. 774; Hodgin v. Southern R. Co., 143 N. C. 93, 55 S. E. 413, 10 Ann. Cas. 417; McNamara v. Chicago, etc., R. Co., 126 Mo. App. 152, 103 S. W. 1093; Fusili v. Missouri Pacific R. Co., 45 Mo. App. 535; 33 Cyc. 1126, 1127; notes 10 Ann. Cas. 418, and 13 Ann. Cas. 854, and cases cited.

[6] It is argued that, conceding that the duty of deceased to look and listen was qualified by the presence and signal of the watchman, deceased was guilty of negligence in stepping recklessly in front of a train which he must necessarily have seen. This argument ignores the evidence to the effect that deceased was blind in his right eye. He would not have seen the cars approaching from the right unless he looked for them, and the duty to look, as we have seen, was qualified by the presence and action of the watchman. Furthermore, it is not certain from the evidence that deceased did not look. The presumption is that he did, and this is not necessarily negatived by the fact that he started across the track. The cars were moving very slowly, and, against the background of the swiftly moving Chesapeake & Ohio train, may have appeared not to be moving at at all. If deceased looked only a few seconds before starting across the track, the cars would have appeared to be on the belt line track; for the inside rail of the city track intersected with the belt line track only 25 feet from the crossing, and, at a speed of 4 miles per hour, the cars would have traversed this distance in less than 5 seconds. And how often and how intently deceased should have looked before crossing the track was peculiarly a question for the jury. As said by Judge Woods, speaking for this court:

"The question whether a traveler should stop to listen and look, how intently and how constantly, or how often he should listen and look in the exercise of the prudence of a reasonably careful man, depends upon all the circumstances; and one of the circumstances is the rightful expectation of the traveler that the railroad will perform the duty required by law and by ordinary care of warning him by sounding a locomotive bell or whistle on approaching a crossing. Whether a traveler on the highway has looked and listened as a man of ordinary prudence would is generally a question for the jury." United States Director General of Railroads v. Zanzinger (C. C. A. 4th) 269 F. 552.

Certainly, where it appears, as it does here, that the cars were moving, not over the main line or even a belt line used for transportation, but over the city track used for loading and unloading; that the cars were being pushed slowly and with little noise; that the engine was not in front to attract attention by its puffing and the ringing of its bell, but was 200 feet or more away and upon another track; that the attention of persons in the street would naturally be attracted by the passage of the fast train; and that the watchman, by raising the danger signal near the Chesapeake & Ohio tracks, had impliedly given notice that it was safe to proceed up to that point—it was for the jury to say whether deceased looked and listened when approaching the track as a man of ordinary prudence would have done under the circumstances.

[7] There was evidence from which the jury might have found that deceased was "reeling or pitching forward" as he proceeded down the street, and that this condition could have been observed when he was some distance from the track. The jury might have inferred from this that, notwithstanding negligence of the deceased, his condition might have been observed and his injury prevented, if a trainman had been stationed on the front of or walking in advance of the leading car, as required by the rules of the company, and had been keeping a proper lookout. In this view of the case, the negligence of the defendant, and not that of the deceased, would be the proximate cause of the injury under the "last clear chance" doctrine. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408,

12 S. Ct. 679, 36 L. Ed. 485; Schoonover v. Baltimore & O. R. Co., 69 W. Va. 560, 73 S. E. 266, L. R. A. 1917F, 1, Ann. Cas. 1913B, 964; Norfolk & P. Traction Co. v. Forrest, 109 Va. 659, 64 S. E. 1034.

[8] A group of plaintiff's exceptions deals with the right of defendant to cross-examine witnesses as to subjects not covered by the examination in chief. It is well settled in the federal courts that, with certain well-defined exceptions, the cross-examination should be limited to the matters brought out on direct examination. Camp Mfg. Co. v. Beck (C. C. A. 4th) 283 F. 705; Houghton v. Jones, 68 U. S. (1 Wall.) 702, 17 L. Ed. 503; Heard v. U. S. (C. C. A. 8th) 255 F. 829, 833, 167 C. C. A. 157.

The rule is well stated by Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, in Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 F. at pages 674, 675, 64 C. C. A. 186, 187, as follows:

"In the courts of the United States, the party on whose behalf a witness is called has the right to restrict his cross-examination to the subjects of his direct examination, and a violation of this right is reversible error. If the cross-examiner would inquire of the witness concerning matters not opened on the direct examination, he must call him in his own behalf [citing cases]. The reason of the rule is that a witness during his cross-examination is the witness of the party who calls him, and not the witness of the party who cross-examines him. Wilson v. Wagar, 26 Mich. 457, 458; Campau v. Dewey, 9 Mich. 417, 418. The cross-examiner has the right to bind his opponent by the testimony of the witness upon cross-examination relative to every subject concerning which his opponent examined him in the direct examination. But he has no right to bind his opponent by the testimony of the witness during the cross-examination upon subjects relative to which his opponent did not inquire. If the cross-examiner would investigate these subjects by the testimony of the witness, he may and he must make him his own witness, and stand sponsor for the truth of his testimony. It is discretionary with the court to permit

14 F.(2d)—7

the cross-examiner to do this at the time he is conducting the cross-examination, because the time and the manner of the trial are within the discretion of the court. It is discretionary with the trial court to permit leading questions to be put to a hostile witness upon his direct examination. But in the federal courts the line of demarcation which limits a rightful cross-examination is clear and well defined, and it rests upon the reason to which attention has been called. It is the line between subjects relative to which the witness was examined upon the direct examination and those concerning which he was not required to testify. It exists because within that line the party who calls the witness stands the sponsor for the truth of his testimony, while without that line he does not. It does not vary, at the discretion of the court, with any convenience or necessity of court or counsel, because no convenience or necessity can be conceived of which would not enable the cross-examiner to make the witness his own, and because, to subject the rule to the discretion of the court or counsel, is to abrogate it."

[9, 10] Another group of exceptions deals with the exclusion of evidence as to the custom of defendant when cars are backed over the Fifteenth street crossing to have a trainman either on the front end of the car or walking immediately in front of it. We cannot pass upon these exceptions, because there is no avowal in the record, and we cannot know what the excluded evidence would have been. Camp Mfg. Co. v. Beck, supra; Sun Pub. Co. v. Lake Erie Asphalt Block Co. (C. C. A. 6th) 157 F. 80, 84 C. C. A. 584. As the case goes back for a new trial, however, we deem it not improper to say that ordinarily evidence of custom as to matters indicated in the question is admissible. 33 Cyc. 1075, 1076; Casdorph v. Hines, 89 W. Va. 448, 109 S. E. 774; Bradley v. Ohio, etc., R. Co., 126 N. C. 735, 36 S. E. 181.

For the reasons stated, we think that there was error in the trial in the court below, and the judgment of the District Court is accordingly reversed, and the case is remanded for a new trial.

Reversed.