## No. 10,178.

HENRY DEIKMAN VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

To recover damages for injuries received from a railroad Company, it is necessary for plaintiff to prove that the accident, in consequence for which the injuries were received, was

caused by the negligence of the railroad company, and that the plaintiff was not guilty of any negligence which created or aided in the accident.

# APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

### *Hornor & Lee* for Plaintiff and Appellee:

1. When the surroundings of a public crossing in a populous city are such as to render it dangerous, it is the duty of a railroad company to take thereat such precautions for the protection of the public as an ordinarily prudent person would consider commensurate with the danger. Patterson on Railway Accident Law, Sec. 170; Beach on Contributory Negligence, Sec. 65; Wharton on Negligence, Sec. 798 (a).

2. If it be proven on the trial of a case that a crossing at which an accident occurred is of such a character as renders necessary the presence thereat of a flagman, for the purpose of protecting the public; and if it be further proven that the presence of a flagman would have prevented the injury, it is negligence on the part of the railroad company operating its line across such crossing, if it failed to post one there. Patterson, Sec. 167; Wood's Railway Law. p. 1313.

3. When a railroad company does employ a flagman at the crossing of a public street traversed by its line, and an accident there occurs. his failure to perform his duty is negligence for which the company is responsible. Wood, p. 1313.

4. When a railroad company has imposed upon itself the duty of having a flagman at a certain crossing of its line, and such custom on the part of the railroad company has been continued for so long a time that travelers have been induced to rely upon it as a means of protection, its discontinuance, without notice to the public, is negligence on the part of the road. Patterson, Secs. 167, 169; Wood, p. 1314; Wharton, Sec. 798 (a).

5. Railroad companies are bound to take extraordinary precautions for the protection of the public in the backing of their trains over a crossing of a street in a city. What precautions are necessary to be taken is to be decided only after taking into view all the circumstances surrounding such crossing. Patterson, Sec. 171; Beach, 202; Wharton. Sec. 805.

6. Train hands must be vigilant and attentive to their duties when the train approaches a crossing. What degree of vigilance and attention is required of them depends upon the character of the crossing. Patterson, Sec. 172.

7. Compliance with statutory requirements for the protection of the public at crossings in in a populous city, does not relieve the railroad company from the charge of negligence: it must take such precautions as are necessary under the circumstances, and as are required by the peculiar character of the crossing. Patterson, Secs. 164 and 165.

8. If a railroad company has been in the habit of giving certain signals of warning at a certain crossing of a public street along the line of its road, and such custom is known to a party injured, such person is not chargeable with negligence if he acts upon the idea that there is no danger because the customary signals are not given. Beach, Sec. 23; Wood, pp. 1314, 1319 and 1328.

9. Contributory negligence on the part of plaintiff will not avail as a defense when it was the result of excitement and tremor produced by the misconduct of defendant. Holzab vs. Railroad Company, 38 Ann. 190; Patterson, p. 62.

10. If no signals of danger, such as the character of the crossing demanded, and as were usual there, were given as plaintiff approached it, in time to enable him to protect himself from the moving train, and if there was a locomotive near the crossing with a headlight shining brightly, casting its rays across it in the direction of Canal street, the fact that the plaintiff might have seen the train approach, had he been particularly watchful in that direction, will not debar him from a recovery if it is found that he was watching

Deikman vs. Railroad and Steamship Company.

the locomotive with the headlight (the only apparent source of danger), with the view of protecting himself against it. Wood, p. 1317.

11. If a crossing be a specially dangerous one, it is negligence in the railway company if its train approaches the crossing even at a rate permitted by statute or ordinance, when that rate is in excess of that which a due regard for the safety of the public requires, with reference to the more or less dangerous character of the crossing. Patterson, Sec. 158, p. 159.

12. Contributory negligence is well defined to be that want of reasonable care upon the part of the person injured which concurred with the negligence of the railroad company in causing the injury. Patterson, Sec. 47, p. 48.

13. Contributory negligence can, therefore, be proved only by showing: first, that on the part of the plaintiff something has either been done or omitted to be done, which, under the circumstances, and from a prudent regard for his safety, ought, in the one case to have been omitted, or, in the other, to have been done; and second, that that particular act of commission or omission on the part of the plaintiff concurred with the defendant's breach of duty in causing the injury. If the proofs fail to show either of these elements, the plaintiff's contributory negligence cannot be said to be established. Patterson, Sec. 48, p. 48.

14. When the verdict of a jury is based on their estimate of conflicting evidence, and is approved by the trial judge, it will not be disturbed. Fox vs. Jones, 39 Ann. 529.

## *Leovy & Blair* for Defendant and Appellant:

1. In an action of this kind it is essential for plaintiff to prove that the accident was due to some want of care or neglect of duty on defendant's part, and that he was guilty of no negligence which helped to bring about the injuries of which he complains. Pierce on Railroads, pp. 343, 345, 346; Beach on Contributory Negligence, p. 191, § 63, ffg.; Id. p. 195; 1 Rover on Railroads, pp. 531 ffg.; Murray vs. Railroad Co., 31 Ann. 490; Schwartz vs. Railroad Co., 30 Ann. 15; Mercier vs. Railroad Co., 23 Ann. 264.

2. The evidence establishes the entire freedom from fault and absence of negligence on the part of defendant and its employees.

   a. The train was moving slowly; the bell was rung continuously; a flagman was at the crossing with a red signal light and gave plaintiff timely warning of the approach of the train: and all the signals and precautions required by law or the particular circumstances of the case were observed.

   b. A railroad company is not required to stop every time a person or wagon is seen approaching the track. A steam car has the right of way, and those manning it have a right to presume that the traveler will stop in time to avoid a collision. Pierce on Railroads, p. 342: Leason vs. R. R. Co.. (Maine), 1 East. Reporter, 101; Schwartz vs. R. R. Co., 30 Ann. p. 19.

   As soon as it became apparent that a collision would occur if the train was not stopped, every possible effort was made to stop and avert the accident.

3. The duties of the public and a railroad company at a crossing are mutual and reciprocal. A performance of his duties is as essential to plaintiff's case as a failure of the railroad company to do what is required of it. The evidence discloses an entire failure on plaintiff's part to observe the precautions the law requires of him and shows that he was guilty of such contributory negligence as would defeat his right to recover damages, were the defendant justly chargeable with every fault alleged in the petition or attempted to be proved on the trial.

   a. It was plaintiff's duty as he approached the crossing to have made a diligent use of his eyes and ears; to assume there was danger and to look out for moving cars, and under no circumstances to attempt to cross ahead of a near approaching train. Whenever by so doing he could have become aware of the train's approach in time to escape, it must

be presumed, in case of a collision, either that he did not look or, if he did look, that he did not heed what he saw. He who can see and does not must be treated as if he did see. Pierce on Railroads, pp. 343, 315, 346; Beach on Contributory Negligence, p. 191, § 63; id. pp. 193, 195; Railroad Co. vs. Hobbes (Maryland), 19 Am. and Eng. R. R. Cas. 341; 31 Ann. 490; 30 Ann. 15; 23 Ann. 264.

b. · The evidence shows beyond a doubt that, if plaintiff had looked or listened carefully as he neared the crossing, he would have become aware of the train's approach. Hence he is in this dilemma: either he did not make the proper use of his eyes and ears and was, therefore, guilty of carelessness; or he knowingly attempted to cross the track in front of the approaching train and hence was imprudent and reckless. Either horn of the dilemma is fatal to his case.

c. The dangerous character of the crossing or the presence of obstructions on the track, if any there were, so far from excusing plaintiff's conduct, heightens its imprudence and negligence. Beach on Contributory Negligence, p 203, § 65; Patterson's Railway Accident Law, pp. 171. 172, § 177.

4. Positive outweighs negative testimony. The statements of seven witnesses that they saw a certain thing preponderate over the statements of four witnesses that they did not see it Starkie on Evidence, § 867; 35 Ann, 500, 19 Am. and Eng. R. R. Cas. 276-278.

The opinion of the Court was delivered by

McENERY J. The plaintiff sues the defendant Railroad Company for injuries sustained in consequence of a collision between a train o f cars of the defendant and a wagon driven by plaintiff, in the City of New Orleans, near 7 o'clock p. m., at the Barracks street railroad crossing, on March 17th, 1887.

The testimony, as is usual in cases of this character, is conflicting. But from a careful and attentive review of the statements in the record, we think the following facts are conclusively established. On the evening of the 17th of March, 1887, about 7 o'clock, the incline engine of the defendant company coupled on to six freight cars for the purpose of placing them on defendant's transfer boat, and began to back them in the direction of the Barracks street crossing. This was the only practical way to put the cars on the transfer boat. The train was running at a reasonably slow rate of speed, not exceeding four miles an hour. The electric light at the crossing gave at this time a sufficient light to make plainly visible for some distance the surroundings at the crossing. There were no obstructions to prevent a full view of the crossing from the 3d District Ferry Landing, and the approach of trains from the direction of Hospital street, the direction from which the train come at the time of the collision. The Third District Ferry boat landed about the time the defendant company's train was moving towards the crossing. Three vehicles were driven from the ferry slip towards the crossing, the first two were driven at a comparitively rapid speed and successfully made the crossing when

the train was some seventy-five feet from them and approaching them. The third wagon driven by plaintiff was ten or twelve feet behind second wagon. The horse was driven on the track and one wheel of the wagon crossed the first rail of the track. At this time the train was within a short distance of plaintiff's wagon, some ten or twelve feet. The flagman was at the crossing, he flagged down plaintiff's vehicle as he had flagged down the other two wagons which had successfully passed over the track. The plaintiff failing to heed the signal, the flagman halloed to plaintiff to stop, or back, and as he still continued in his course, he seized his horse and endeavored to get the wagon from its perilous position. The horse's head was turned until the first wheel of the wagon was parallel with the track, and it became fastened so that it was impossible to get the wagon off in time to prevent the collision which threw plaintiff from it and injured him. The train in consequence of the efforts made before the collision, passed on a few feet and was stopped.

While the train was backing the bell was continually rung. Every reasonable effort was made by defendant's employees to avert the accident. The signal to stop was given, the brakes applied and the engine reversed. The train hands were in their respective positions and were discharging their duties. There were lights at least on the top of the train. These were used as well as the loud voices of the employees to warn the plaintiff of his danger. All these warnings were given and the efforts to stop the train made as soon as it was evident that the plaintiff was in danger, that is as soon as he had reached the track. The crossing, like others in populous cities, is dangerous. The railroad company is bound to take extraordinary precaution for the protection of the public at such places in the management and handling of its trains. Employees of railroad companies must always be vigilant and attentive, and their responsibility must be measured by the dangerous conditions which confront them; the greater the danger, the greater the vigilance and attention.

It would be the greatest carelessness and negligence for a railroad company to fail in any of the requirements necessary to protect the public, at a crossing where persons and vehicles are constantly passing. There is an obligation also on the part of the public to be vigilant and attentive when passing over a crossing where passing trains may be frequently expected. Counsel for plaintiff says in his brief:

"Of course there can be no question, that if the court finds that the flagman was there, it was the greatest negligence on the part of plaintiff to undertake to drive by him." We are convinced that the flagman was at the crossing, and gave timely warning to the plaintiff.

Plaintiff's witnesses prove that a flagman was kept at the crossing before and after the accident, but on this particular night they did not see him at the crossing. There must have been some obvious reason for his absence from his post of duty on this particular occasion. The company must have ceased placing a flagman there, or he might on his own responsibility, have quit his accustomed place. Neither of these facts is shown. The plaintiff states that some one halloed to him to stop or back when he got on the track, and in obedience to this he pulled his horse back. The evidence shows that the horse's head was turned so that one of the front wheels was parallel to the track. Who was it that halloed to plaintiff? The plaintiff does not know who it was. But other witnesses identified the party who halloed to plaintiff as Fitzgerald the flagman, who also seized the horse and turned his head towards Canal street, thus placing the wheel parallel to the track. The plaintiff did not hear the bell ringing, or the noise of the cars in motion. He did not see the flagman, or his signals, the lights, or the cars or anything to warn him of the approach of the train. The evidence shows had the plaintiff been governed by ordinary prudence in using his sight and hearing, he would have seen the train in motion, the flagman at the crossing, his signals in his efforts to arrest the course of plaintiff, he would have heard the continuous ringing of the bell and the noise of the train. The plaintiff was evidently paying attention only to the wagons ahead of him, and as these had passed in front of the moving train, he thought he could also do so with safety. After the second wagon had passed he was warned in sufficient time to prevent his attempt to cross the track. There was no violation, no neglect of any of the ordinary and necessary precautions, which could have led him to believe it was prudent to make the attempt.

There is not sufficient evidence to establish the fact contended for by plaintiff, that there was a hole in the track, "longer and deeper than should have been," caused by the neglect of plaintiff to repair the same, in consequence of which plaintiff's wagon was unable to be moved from the track in time to prevent the collision.

The plaintiff has failed to show that the accident in consequence of which he received his injuries, was due to the neglect of the defendant company, and that he was guilty of no negligence which aided in the accident.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the judgment appealed from be set aside, annulled and reversed, and it is now ordered adjudged and decreed that the demand of plaintiff be rejected, with cost of both courts.