## Chicago & Alton Railway Company v. William Wright.

1. FLAGMAN—*right to assume presence of, etc.* A person knowing that a flagman is usually stationed at a railroad crossing has a right to rely upon his presence there and the performance by him of his duty.

2. FLAGMAN—*duty of.* It is the duty of a crossing flagman to know of the approach of trains and to give timely warning thereof to all persons who attempt to cross the tracks and persons who have occasion to cross such tracks can rely that such warning will be given in case of danger.

3. FLAGMAN—*what does not affect liability of railroad company for failure of, to perform duty.* It is immaterial whether or not the duty to maintain a flagman has been imposed by law upon a railroad; if it assumes that duty, it is bound to perform it with due care.

4. INSTRUCTION—*when, containing abstract proposition of law, will not reverse.* The fact that an instruction might have been misleading in that it merely contained an abstract proposition of law, will not reverse where the Appellate Court is satisfied that the appellant was not prejudiced.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed April 20, 1905.

KERRICK & BRACKEN, for appellant; F. S. WINSTON, of counsel.

D. D. DONOHUE and LOUIS FITZ HENRY, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case to recover damages for injuries alleged to have been received by plaintiff at the Washington street crossing of defendant's railroad in the city of Bloomington. Upon a trial by jury in the Circuit Court the plaintiff recovered judgment for $400, to reverse which the defendant appeals.

The additional count to the declaration upon which the plaintiff relied, charged that the crossing where appellee was injured was a dangerous crossing; that it was the duty of defendant to exercise such a reasonable degree of care

and caution at the said intersection as would furnish reasonable protection for safety to persons and their property in crossing said tracks at such intersection, so that such persons might not unnecessarily be exposed to danger of injury; that for, to-wit, ten years, the defendant had maintained a flagman at this point; that upon the day and date of the injury the defendant negligently failed to have its flagman at said point to warn plaintiff of danger; that not being so warned plaintiff presumed that the crossing was open for public travel and proceeded to cross the tracks; that while so doing and in the exercise of due care for his own safety, as his horse got upon one of defendant's tracks, one of defendant's locomotive engines ran out from behind a string of box cars, then and there standing upon an adjacent track and obstructing plaintiff's view, and struck plaintiff; that he was then and there thrown to the ground and injured, etc.

At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant moved the court to direct a verdict in its favor, which motions were overruled.

Appellant contends that the original motion should have been granted, for the reason that the evidence shows that appellee was not in the exercise of ordinary care at the time he received the injuries for which he seeks to recover.

The material facts as set out in appellant's brief are substantially as follows: At the place of the accident appellant has two main tracks, running north and south. About fifty feet west of these tracks are other of appellant's tracks which cross Washington street. South of Washington street and running east and west are the Big Four and Lake Erie and Western tracks, which cross appellant's tracks, and south of the aforesaid tracks the passenger depot is located. Appellant had for a number of years maintained a flagman at the Washington street crossing of all its tracks. The duties of this flagman required him to watch not only the crossing at the main tracks, but at said other tracks, including that known as the Jacksonville Branch. At the time in question, the flagman's duties had called him to the

Jacksonville Branch, where a switch engine was working at the street crossing; this placed the flagman about "half a block" from where the accident occurred. As appellee approached the crossing, from the east, it was blocked by a freight train standing on the east main track. At the moment he reached the crossing, or immediately thereafter, an opening was made in the freight train for the entire width of the street.

Appellee drove his horse across the east track in a south-westerly direction. Before he started across the track, the front end of a switch engine which was coming from the north on the west track, at a rate of from two to four miles an hour, had reached the south end of the coal cars standing on the east track, at the north side of the street. Three switchmen, Grenner, McCoy and Jones, were riding on the foot-board at the front of the engine. McCoy was on the east end of the board and he first saw appellee at the moment the engine passed the south end of the aforesaid coal cars. Appellee was then just starting to cross the east track and McCoy called to him and threw up his hand. Appellee paid no attention to this warning, but drove right along in the same direction and until he had reached a point south of the south line of the street. At this point the horse's head was in line with the east side of the engine. McCoy remained on the foot-board, leaned over on the draw-bar and the shoulder of the horse struck him on the back. The horse turned from his course somewhat and started in a southerly direction, and some portion of appellee's wagon was struck a glancing blow by the steam cylinder of the engine, which was located just behind McCoy. No part of the horse or wagon was in front of the engine except the horse's head.

There is evidence tending to show that while the ordinances of the city did not require appellant to maintain a flagman at the crossing in question, it had nevertheless, for several years, done so voluntarily. Appellee, knowing, as his testimony discloses, that such flagman was usually stationed at the crossing, had a right to rely upon the presumption that he was at his post and would do his duty.

It is the duty of a crossing flagman to know of the approach of trains and to give timely warning thereof to all persons who attempt to cross the tracks, and persons who may have occasion to cross such tracks can rely that such warning will be given in case of danger. C. & A. R. R. Co. v. Blaul, 175 Ill. 183; C., St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587.

It is the well-settled rule that when a railroad company assumes the duty to maintain gates or a flagman at a railroad crossing, that when the gates are open, or no signal of danger is given by the flagman, then the traveler can assume that it is safe to cross, and such traveler need only look and listen to be in the exercise of due care and caution for his own personal safety. B. & O. R. Co. v. Stumpf, 97 Md. 78 (54 Atl. 978); Sights v. L. & N. R. Co. (Ky.), 78 S. W. 172; Woehrle v. Minnesota Transfer Ry. Co. (Minn.), 84 N. W. 791 (52 L. R. A. 348); Berry v. Penn. R. Co., 4 Atl. Rep. 303.

It is also the law that where it assumes the duty it is immaterial whether or not the duty to maintain a flagman has been imposed by law upon a railroad. If it assumes that duty, it is bound to perform it with due care. Wolcott v. N. Y. & L. B. R. Co. (N. J. L.), 53 Atl. 297.

Appellee testifies that when he got to the crossing he stopped and looked for a flagman and saw none; that he heard no bell. We regard the question as to whether the bell upon the engine was ringing at the time as immaterial. By placing and keeping a flagman at the crossing of its own volition, appellant recognized that the crossing was a dangerous one and that the ordinary precautions required by the statutes were inadequate and insufficient to protect the public.

The evidence shows that Washington street was a much traveled thoroughfare; that the crossing in question was in constant use by omnibuses, carriages, wagons and other vehicles, going to and from the appellant's depot, and a coal mine located in the vicinity of the crossing. It further appears that appellant was at the time using one of its

main tracks for switching purposes and the other for the storage of cârs; that the switchman, Jones, who with McCoy was riding on the foot-board at the front of the engine and who was watching for pedestrians and vehicles at the crossing, when the engine came from behind the string of cars, failed to see appellee until the engine was almost upon him; and that McCoy was unable to get out of the way in time to avoid being struck by appellee's horse. In view of the foregoing, and other facts and circumstances appearing in the evidence, the trial court would not have been warranted in holding as a matter of law, that appellee was guilty of contributory negligence. The requests for peremptory instructions were, therefore, properly refused.

It is insisted that the court erred in giving the fourth instruction offered by plaintiff. · While the instruction is open to the criticism that it is misleading, being but an abstract proposition of law, and not wholly warranted by the evidence, we are satisfied that appellant was not so prejudiced thereby as to warrant a reversal of the judgment. The point alleged to have been omitted from appellee's third instruction is fully and clearly covered by appellant's fourth and appellee's fifth instruction. It is not urged that the damages awarded are excessive. The verdict was, we think, warranted by the evidence, and there being no prejudicial error in the record, the judgment will be affirmed.

*Affirmed.*