JAMES B. McNAMARA, by Next Friend, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 24, 1907.

1. RAILROADS: Negligence: Crossing: Flagman: Demurrer to Evidence. The evidence relating to the conduct of a railway company's trainmen and flagman at a crossing is reviewed and the case for negligent injury of a traveler is held properly sent to the jury.

2. ———: ———: ———: ———: Contributory Negligence. The conduct of a fifteen-year-old boy in approaching a crossing where he was injured by the alleged negligence of railroad employees is reviewed and his contributory negligence is held a question for the jury, since he was acting within the scope of his duty in looking to the flagman for guidance and cannot be condemned for intrepreting the absence of a warning signal as an assurance of a clear crossing. Held, further, that the traveler at a crossing where a flagman is stationed may rely upon the latter's signals, and the rule in regard to looking and listening for trains is modified to that extent.

McNamara v. Railroad.

3. ————: ————: ————: ————: ————. *Held*, further, that a traveler is not required to keep his eye in one particular direction for an approaching engine, since direct danger might approach from either way, and it was his duty to observe at the same time the flagman.

4. ————: ————: ————: ————: Instructions. An instruction regarding the physical infirmities and mental fitness of a flagman is approved.

5. ————: ————: ————: Contributory Negligence: Youth. An instruction relating to the care required of a boy fifteen years of age is approved.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A. Mosman*, Judge.

AFFIRMED.

*Brown & Dolman* for appellant.

(1) The court erred in refusing to instruct the jury to find for the defendant as requested by defendant. Duncan v. Railroad, 46 Mo. App. 198; Skipton v. Railroad, 82 Mo. App. 143. Also see: Cadwallader v. Railroad (Ind.), 27 N. E. 161; Smith v. Railroad (Ind.), 40 N. E. 271; Railroad v. Franz, 4 L. R. A. 389; Mackowik v. Railroad, — Mo. —, 94 S. W. 262; Walker v. Railroad, — Mo. —, 92 S. W. 92; Payne v. Railroad, 136 Mo. 575; Kelsay v. Railroad, 129 Mo. 374; Hook v. Railroad, 162 Mo. 569; Sanguinette v. Railroad, — Mo. —, 95 S. W. 386; Nugent v. Milling Co., 131 Mo. 253; Guyer v. Railroad, 174 Mo. 344; Spiro v. Transit Co., 102 Mo. App. 265; Railroad v. Wyatt, 96 S. W. (Ark.) 376; Railroad v. Dillard, 94 S. W. (Ark.) 617. (2) Plaintiff was guilty of negligence as a matter of law in failing to observe the flagman until he got upon the track. Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362; Dairy Co. v. Transit Co., 98 Mo. App. 26; Lien v. Railroad, 79 Mo. App. 475; Felchley v. Traction Co., 96 S. W. 420, and cases cited; Railroad v. Wyatt, 96 S. W. 376; Railroad v. Dillard, 94 S.

W. 617. (3) The court erred in giving to the jury instruction numbered 9 requested by plaintiff, as follows: Harper v. Terminal Co., 187 Mo. 586; Walsh v. Railroad, 102 Mo. 587. (4) The court erred in refusing to give to the jury instruction numbered 8 requested by the defendant, and in giving to the jury plaintiff's instruction numbered 4; Walker v. Railroad, — Mo. —, 92 S. W. 92; Graney v. Railroad, 157 Mo. 679; Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 562. (5) The court erred in refusing to give to the jury defendant's instruction numbered 7, and erred in modifying said instruction and giving it as modified. Hogan v. Railroad, 150 Mo. 55, and cases cited. Tillman v. Transit Co., 102 Mo. App. 558, and cases cited.

*Thomas F. Ryan* for respondent.

(1) "The rule in regard to the duty of persons about to go on a railroad track at public crossings, to look and listen for trains is modified, therefore, where the crossing is usually guarded by a flagman, so as to allow a passenger to rely in some measure upon the flagman's duty." Railroad v. Hutchinson, 120 Ill. —; Railroad v. Cloud, 134 Ill. 586; 45 Am. and Eng. Railroad Cases, 137; 33 Ill. App. 129; Beach on Contributory Negligence, sec. 190; 3 Elliott on Railroads, sec. 1157, p. 752.

JOHNSON, J.—Plaintiff, a minor, sues by next friend to recover damages for personal injuries he alleges were caused by the negligence of defendant. The jury returned a verdict in his favor in the sum of $1,999, and the cause is here on defendant's appeal.

The injury occurred about eight o'clock in the morning of April 3, 1906, at the crossing of switch tracks, operated by defendant, and Patee street, a public thoroughfare in the city of St. Joseph. Plaintiff, at the time, was employed in driving a one-horse delivery

wagon for a concern engaged in the furniture business. Patee street runs east and west and midway between Fourth and Fifth streets is crossed by five switch tracks which form a part of defendant's terminal system in St. Joseph. The west one of these tracks, as it comes from the north, bears slightly to the east, so that the angle made by it with the street lying west of it is somewhat acute. Immediately west of this track and on the north side of the street is a large business house occupied by the Mokaska Coffee Company, which extends to Fourth street on the west. Its south wall is on the north property line of Patee street. A shipping platform twenty-six feet long, four feet high and four feet wide adjoins the building on the south. The distance between the west rail of the Mokaska track (the name given the west switch track) and the building is four feet, at the point where the track intersects the north line of the street, and in coming from the north, the track converges towards the building as it nears that point. Patee street is fifty feet wide between property lines. On its south side, opposite the Mokaska building are the freight depot and tracks of the St. Joseph Terminal Company. A short distance east of the east switch track and on the north side of the street, defendant maintains a small house for the use of a flagman employed by it at that crossing. Plaintiff, who at the time of the occurrence in question was fifteen years old, drove south on Fourth street and thence east on Patee. When he turned the corner, he looked for the flagman whose station we have described but, owing to obstructions, could not see him. He was following a wagon and was in the act of passing it on the north side when it turned south into the terminal yards. Plaintiff was not over twenty feet from the Mokaska track when he first saw the flagman. He then was driving in a walk and his wagon was eighteen or twenty feet south of the north property line. He looked to the north but saw no train

approaching, listened but heard no bell and, observing that the flagman was talking to a companion and gave him no signal to stop, concluded the way was clear, and suffered his horse to proceed to the crossing. As the horse reached the Mokaska track, a switch engine coming from the north on that track emerged into view from behind the building. The witnesses do not agree about the rate of speed at which it was moving, but there is evidence tending to show that its speed was approximately ten miles per hour, and many of the witnesses say the bell was not ringing. When discovered by plaintiff, the engine was too close to avoid a collision. In his endeavor to escape, plaintiff urged the horse forward but the engine struck the wagon, tore it loose from the horse and carried it to a point about twenty feet south of the street where it was overturned on the west side of the track. Plaintiff remained in the wagon and received severe injuries, the nature of which it is unnecessary to state, as no claim is made that the verdict was excessive or that error appears in the instruction given to the jury on the measure of damages. Instantly after discovering the presence of the approaching engine, plaintiff saw the flagman wave his flag, and heard him shout, but these warnings came too late to be of any service. The flagman was seventy-nine years old and was afflicted in one of his legs with rheumatism to the extent of seriously affecting the usefulness of that member. He stood in the sidewalk space in front of his house, and did not change his position during the progress of the events described. An ordinance of the city which was admitted in evidence provides that "no locomotive engine . . . shall be driven, propelled or run upon or along any railroad track within said city at a greater speed than the rate of five miles per hour," and that "the bell of each locomotive engine shall be rung continually while running within said city." The facts

detailed are those on which plaintiff bases his right of recovery.

On the part of defendant the evidence tends to show that the bell was rung continuously; that when plaintiff was observed to be in peril, an immediate effort was made by the engineer to stop; that at the time of the collision, speed had been reduced to about two miles per hour; that the flagman waved his flag to attract the attention of plaintiff when the latter was sixty feet or more from the track and, observing his signal to pass unheeded, shouted a warning, and that plaintiff drove into danger solely by reason of his own inattention to these signals and to the way ahead of him. Further, it was shown that a person advancing to the track on the line plaintiff describes as that of his approach, could see north on the Mokaska track a distance of five feet from the corner of the building when he was at a point fifty-four feet west of the west rail of that track and could see twenty-eight feet north when thirteen feet from the west rail. It is conceded that during business hours the crossing in question is a place of great activity. Much switching is done by defendant and many vehicles pass to and fro along the public street. Plaintiff had driven over the crossing a number of times and had been flagged before by the flagman on duty that day.

The specific acts of negligence charged in the petition are that "the agents and servants of the defendant in charge of said engine and cars aforesaid, negligently and carelessly moved said engine and cars at an unlawful rate of speed, to-wit: at the rate of speed of ten miles an hour, and were negligently and carelessly backing said engine upon and across Patee street aforesaid and negligently and carelessly failed to have any person or persons upon the tender of said engine or upon said engine, so that they could observe persons or vehicles that were approaching or upon said track, and negligently and carelessly failed to see plaintiff approaching said

tracks or upon the same, when by the exercise of ordinary care and diligence on their part, they could have discovered plaintiff's position of danger upon said tracks, in time to have stopped the engine, and thus avoided the collision and injury to plaintiff, and negligently and carelessly while moving said engine and cars failed to ring the bell or otherwise notify plaintiff, of the approach of said engine and cars; . . . that the watchman or flagman of defendant . . . failed and neglected to warn plaintiff of the approach of said engine and cars in time to have prevented the collision and avoided the injury to plaintiff, when by the exercise of ordinary care on his part he could have warned plaintiff and prevented the collision and injury to plaintiff; . . that the servant so appointed and placed as such watchman or flagman was old, incapacitated, careless and negligent and failed and neglected to perform the duty which defendant owed to the public traveling upon said street, all of which the defendant knew or by the exercise of ordinary care on its part could have known." The answer, in addition to a general denial, alleges an affirmative defense which, for present purposes, we will treat as a plea of contributory negligence.

Questions of first importance arise from the insistence of defendant that the learned trial judge should have peremptorily instructed the jury to return a verdict in its favor. On the hypothesis of facts on which plaintiff relies, which is that we must adopt in our consideration of these questions, it is apparent defendant was negligent in the operation of the switch engine and in the failure of its flagman to give plaintiff timely warning of the presence of the unheralded danger which confronted him. Considering the extremely dangerous nature of this crossing caused by the presence of obstructions to the vision of a traveler coming from the west on Patee street and the large volume of travel on

that street, the conduct of the flagman in permitting himself to become engrossed in conversation at a time when watchfulness was imperatively demanded by the stealthy approach of the engine, and thus in failing to give plaintiff any warning until he was inextricably enmeshed in danger, was negligence of a pronounced type, and if plaintiff, as he claims, was looking to the flagman for a signal and was enticed forward by the omission to give it, the negligent act of the flagman must be regarded as a producing cause of the injury. Negligent also were the acts of the trainmen in failing to ring the bell as the engine neared the crossing and in running at a rate of speed prohibited by ordinance. Knowing they were approaching a much used public street, the trainmen could not, in the exercise of reasonable care, fail to employ the means at hand for proclaiming the advance of the engine. They should have rung the bell for the notification of the flagman as well as for a warning to travelers, and they had no right to assume that the flagman would discover the unannounced approach of the engine in time to flag the crossing, nor to rely entirely on his vigilance in the discharge of his duty. Clearly it was for the jury to determine as issues of fact whether or not defendant was guilty of any or all of these several negligent acts, and whether the injury was directly caused by one or more of them, unless we must find from the evidence that plaintiff himself was guilty of negligence in law which directly contributed to the production of his injury.

Should we apply to plaintiff the standard of care by which the conduct of a mature person should be measured, we would not be justified in pronouncing him negligent in law. He was acting strictly within the scope of duty when he looked to the flagman for guidance and is not to be condemned for interpreting the absence of a warning signal as an assurance that he could cross in safety. True, in the observance of rea-

sonable care, he could not rely implicitly on this or any other assurance extended by the conduct of others, but was required to reasonably employ his own senses as the surest safeguard against injury. With an approaching engine in plain view and the risk of collision obvious, a traveler on the highway, if an ordinarily careful and prudent person, would not venture forward either on the express or implied invitation of another. But with a danger not visible and without any indication of its presence, the traveler, whose chief attention should be centered on the flagman, may act on the assurance that no danger is present and relax his vigilance and still remain within the confines of reasonable care. The rule. is thus stated by Judge Goode in Edwards v. Railway, 94 Mo. App. 36: "The right of a person about to cross a railroad, where a flagman is stationed, to rely on the signals of the latter, does not go to the extent of absolutely absolving a traveler from any care whatever for his own safety, nor excuse reckless conduct on his part. It merely exacts of him a less degree of care in looking out for trains and logically so; because the best precaution a traveler can take in such instances is to keep his eye on the flagman instead of the tracks, and a due regard for his safety demands that he fix his attention where he is most likely to receive warning of danger. The flagman is there to give him notice whether the tracks are clear, and is in a better position to know when they may be crossed; for he is, or should be stationed where he can command a view of them each way. The rule in regard to the duty demanded of a person about to go on a railroad track at a public crossing to look and listen for trains is modified therefore, when the crossing is one usually guarded by a flagman so as to allow the traveler to rely in some measure on the flagman's warning." We regard this as a correct statement of the rule, and applying it to the facts of the present case, must hold that it was not negligence in law

for plaintiff to rely on the flagman when he could neither see nor hear the approaching engine.

But it is argued by defendant that the engine must have been in plain sight to plaintiff before he entered its sphere of action, and therefore, he had but to look in the direction whence it came in order to have known of the danger in time to avoid it. To sanction this contention would require us to hold that it was the duty of plaintiff to concentrate his attention on a particular spot while he was nearing the crossing. There were two directions from which he had reason to anticipate the approach of trains and common prudence would dictate that each be given a measure of notice, but as we have observed, plaintiff's first duty was to keep the flagman under scrutiny, and had he failed to do this and thereby received his injury, reason might appear for holding him negligent in law. Assuming as we must that the line of plaintiff's advance was not over twenty feet distant from the north line of the street, that his horse traveled at a rate of speed approximately half that of the engine, the first point at which the engine could have been seen, according to observations made by defendant's witnesses, was thirteen feet from the west rail of the track. With plaintiff at that point, the head of the horse was so close to the track that it is reasonable to infer he then was in imminent danger. To say that plaintiff should have seen the engine at the first instant it became visible and backed his horse away from the track, would be to say that it was negligence for him to be looking at the watchman in whom, as we have shown, he was justified in placing great reliance. We think it was for the jury to determine, under all the facts and circumstances of the situation whether he acted with reasonable care in relying to the extent he did on the implied assurance of the watchman that he could cross in safety. The learned trial judge committed no error in the refusal of defendant's request for a peremptory instruction.

Complaint is made of the giving of the following instruction: "If you find from the evidence that the defendant had placed a watchman at the crossing where plaintiff was injured, then the watchman so placed at the crossing by the defendant, should be physically capable of reasonably discharging the duties of such watchman, and if you find from the evidence that the watchman placed at said crossing by defendant on the day plaintiff was injured, by reason of his age, or physical debility, if you find from the evidence this to be the fact, was incapacitated to reasonably discharge the duties of such watchman, and you further find that said watchman if he had been physically able to perform the duties of watchman could and would have warned the boy in time to have prevented the collision by the exercise of ordinary care on his part, and that by reason of such physical incapacity a collision occurred between the engine of the defendant and the vehicle in which plaintiff was riding, and the plaintiff's injury was the result thereof, then your verdict will be for the plantiff, provided you find from the evidence, plaintiff was exercising reasonable care and caution to protect himself from injury." The great age of the flagman and his physical infirmity, coupled with what appears from the evidence of plaintiff to have been gross inattention to duty, are facts which warranted the submission to the jury of the issue defined in this instruction. We must assume that as the flagman appeared before the jury as a witness there was that in his appearance which justified the inference that he was physically and mentally unfit for the performance of the duties of his position.

Objection is made to the instruction that "plaintiff had not the right to rely alone upon the servants of the defendant protecting him from danger, while approaching said crossing, but he was required to exercise ordinary care for his own protection, that is, such care and caution as a reasonably prudent person of the age,

capacity and experience of plaintiff would reasonably be expected to exercise under like and similar circumstances." The instruction is proper. The conduct of plaintiff is to be measured, not by what an ordinarily prudent man of mature years would have done under like circumstances, but by what an ordinarily prudent boy of his age would have done. The objection is fully answered in this quotation from the opinion in Campbell v. Railway, 175 Mo. 161;

"We do not mean to say that a boy sixteen years old is to be excused when he fails to exercise that degree of care to be expected of an ordinarily prudent boy of that age, but we mean that he is to be measured by the standard of an ordinarily prudent boy, not by that of an ordinarily prudent man of mature years."

A careful examination of the whole record convinces us that no prejudicial error occurred in the trial of the cause. Accordingly the judgment is affirmed. All concur.