# CHARLESTON.

JOHN O. CASDORPH *et als.* v. WALKER D. HINES, DIRECTOR GENERAL.

Submitted November 1, 1921.    Decided November 8, 1921.

1.   RAILROADS—*Testimony of Witnesses in Position to Observe Failure to Give Crossing Signals Entitled to Peculiar Weight.*

In an action for injuries sustained by the driver of a wagon at a railway crossing, the testimony of witnesses, who were in position to observe with unusual care the failure

of the railway company's agents to sound the whistle or bell of the approaching locomotive is entitled to peculiar weight.   (p. 453).

2.  SAME—*Injury at Crossing Not in Itself Evidence of Contributory Negligence.*

Infliction of an injury at a railroad crossing is not in itself evidence of contributory negligence. on the part of the person injured.   (p. 453).

3.  SAME—*Contributory Negligence at Crossing May in Some Circumstances be Question for Court.*

Whether an injury inflicted at a railroad crossing was due to the negligence of the person injured, or whether but for his negligence the injury would not have occurred, may in some circumstances be questions for the court to determine. (p. 453).

4.  SAME—*Contributory Negligence at Crossing Question for Jury on Conflicting Evidence.*

But where the facts are controverted, or if not controverted, are such as warrant either of two reasonable inferences or conclusions as to the negligence of the person injured, one of which would warrant and the other preclude recovery by him, or his personal representatives, it is for the jury to say in such a case whether the person exercised due care for his own protection in driving upon the crossing.   (p. 453).

5.  SAME—*Contributory Negligence of Traveler Relying on Flagman's Omission of Signal Question for Jury.*

It is a matter of common knowledge and experience that travelers approaching a railway crossing, where gates or flagman are usually maintained, take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether in relying upon the omission of the flagman to give the proper signal, the traveler has given that circumstance such weight and consideration as an ordinary prudent man would under such circumstances.   (p. 455).

6.  SAME—*Flagman's Omission of Signal Circumstance to be Considered in Determining Care by Traveler.*

The omission of a flagman stationed at a crossing to give the customary stop signal is a circumstance to be considered with all other facts and circumstances in determining the degree of care exercised by an approaching traveler.   (p. 455).

7.  SAME—*Traveler Not Bound to Look and Listen in One Particular Direction.*

A traveler approaching a crossing is not bound to look and

listen exclusively in one particular direction for an approaching train, since danger might come from another, it being also his duty to observe the signals of the flagman stationed there for his protection against injury. (p. 456).

8.    Same—*Traveler Under no Absolute Duty to Stop, Look and Listen Under all Circumstances.*

A traveler approaching a crossing is under no absolute duty to stop, look and listen for approaching trains under any and all circumstances. The failure so to do is no more than a circumstance for the jury to consider in determining the degree of care exercised by him. (p. 456).

9.    Same—*Testimony as to Flagman's Practice to Warn Travelers Admissible on Issue of Contributory Negligence.*

Where the evidence for the plaintiff shows that the person injured was accustomed to drive over a crossing at frequent intervals, testimony as to a flagman's habitual practice to warn travelers of approaching trains is admissible and important, as tending to prove his knowledge of and reliance upon the flagman's duty to give such warning. (p. 457).

Error to Circuit Court, Kanawha County.

Action by John O. Casdorph and others, as executors of Caleb Casdorph, deceased, against Walker D. Hines, Director General of Railroads, for damages for the death of the deceased. Judgment for defendant, and plaintiffs bring error.

*Reversed and remanded.*

*Lynn & Byrne,* for plaintiffs in error.

*W. N. King,* and *Leroy Allebach,* for defendant in error.

Lynch, Judge:

Caleb Casdorph, while driving his horse and light wagon along Virginia Street in the City of Charleston, attempted to drive over defendant's railway tracks where they intersect the public road or street, and in doing so, was struck by an east bound passenger train operated by defendant's agents, his wagon demolished, his horse fatally hurt, and he himself sustained injuries from which he died a few minutes later. His executors sued to recover damages for the injuries, and from a judgment for defendant, directed by the trial court, they have brought the case here for review.

From the testimony and map filed, it appears that the street and tracks approach and cross each other at an acute angle. The tracks, three in number, extend approximately east and west, and Virginia street in a somewhat south-easterly direction through that part of the city traversed by it. At the time of the accident, about 9 o'clock in the morning, as was his custom for years, Casdorph was driving towards the business center of Charleston from his country home, Virginia Street being his most direct and convenient route into the city. A short distance from the railroad, Mrs. Casdorph having alighted from the wagon, he continued the journey unattended.

Certainly, at least five persons saw him between this time and the collision, which occurred a few minutes later. Three of them, the watchman on duty at the crossing, James, who saw the accident from his office window one hundred and fifty feet away, and Nunnally, who was standing against a truck in the street about one hundred and sixty feet beyond the tracks, witnessed the actual impact of the locomotive with the wagon. Two others, Singleton and Littlepage, also on their way to Charleston, had just crossed the tracks in an automobile and were distant also about one hundred and fifty feet when the crash caused by the collision occurred.

While charging defendant with general negligence and carelessness in the operation of the train and locomotive, the chief points relied on in the proof were the failure to give proper warning of the train's approach by means of the locomotive whistle or bell, and more especially, the omission of the watchman stationed at the crossing to apprise Casdorph of the proximity of the train before he went upon the tracks. Defendant, on the other hand, insists that, assuming —though we suppose not conceding—that the proper signals and warnings were not given, still, the decedent, under the facts presented, was guilty of such contributory negligence as would preclude recovery. As the trial court sustained the motion to exclude plaintiff's evidence, and directed a verdict for defendant, the principal question presented here is whether the court erred in holding decedent guilty of contributory negligence as a matter of law

The solution of this question necessitates further inquiry

into the facts.    Casdorph, it appears, was eighty-three years old, but as no evidence was introduced as to his physical incapacity, his advanced age need not be considered.    He was driving a gentle horse, and according to Singleton, who with Littlepage passed decedent about one hundred feet from the crossing, was "holding over to the right of the street." Apparently oblivious of the impending danger, he did not look in the direction of the train, but "just came right on and the train was coming," decedent being within fifteen or eighteen feet of the center of the crossing when the train, then about one hundred feet distant, sounded several sharp distress blasts with its whistle.    James says he received no warning from the watchman, and Singleton and Littlepage, who, after passing decedent, crossed the tracks slightly ahead of the train, approaching rapidly from the west, insist that the watchman, at the time they passed him, was not out in the street, but was standing between the curb and his watch house, with his back partly towards them, his signal staff resting upon the ground, and that he offered no word or warning although the train was then very near.    They were first apprised of its approach at about the same time they passed decedent, by the steam and smoke, which they saw emanating from the locomotive, which they judged to be about three hundred feet from the crossing, the train itself being at least partially obscured from view by several box cars standing on the track nearest the street.    Concerned primarily with their own safety, and being then within a very short distance of the tracks, they undertook to cross and succeeded in crossing ahead of the train.

Witness, James, corroborates so much of Singleton's and Littlepage's testimony as relates to decedent's actions, and in addition, states that although he noticed Casdorph, when the latter was about sixty feet from the crossing, the train then being perhaps four hundred feet distant, the watchman "showed no indication of recognizing Casdorph's approach," and continues with the statement as to the short distress blasts of the whistle, already referred to.    All the witnesses who testify about the matter agree that the atmosphere was very dense and foggy, for which reason the steam and smoke,

which Littlepage observed, lay low along the ground, and to some extent obstructed the view of the train, as did also the box cars mentioned, and in addition say that they heard no warning from whistle or bell, except the several short blasts immediately preceding the collision.

As these witnesses were in position to observe with unusual care the circumstances surrounding the accident, their testimony as to the neglect to sound the customary warnings by bell or whistle or both within a reasonable distance from the crossing, a duty dictated by reason and required by statute (Sec. 61, Ch. 54, Code, 1918), is entitled to peculiar weight. *Carnefix* v. *Railroad Co.*, 73 W. Va. 534, 537; *Railroad Co.* v. *Bryant*, 95 Va. 213. But as the court's ruling could not have been founded on these facts, sufficiently proved, it is necessary to consider decedent's alleged contributory negligence, which, according to defendant's argument, was the proximate cause of the collision.

On this question, the case of *Canterbury* v. *Director General*, 87 W. Va. 233, is very instructive. That case also involved a collision at a crossing, and, as here, defendant relied for defense on the contributory negligence of the injured man. "It must be borne in mind," says the court, "that the fact that one is injured at a railway crossing does not of itself prove that he is guilty of contributory negligence," and further, "each case of this character must turn upon its own peculiar state of facts. Ordinarily, where the facts are not in dispute—the question of contributory negligence is for the court; but where the facts are disputed and two reasonable inferences may be drawn therefrom, or two reasonable conclusions as to the conduct of the plaintiff may be reached therefrom, one of which would make the plaintiff guilty of contributory negligence, and the other of which would relieve him thereof, it is for the jury to say, upon a consideration of all the circumstances, whether or not he was, at the time of the injury in the exercise of due care." This doctrine is supported by many decisions, notably, *Carnefix* v. *Railroad Co.*, *supra;* and *City of Elkins* v. *Railway Co.*, 76 W. Va. 733, 86 S. E. 762, 1 A. L. R. 198. See also *Massoth* v. *Delaware &*

*Hudson Canal Co.,* 64 N. Y. 524; *Valin* v. *Milwaukee etc. R. Co.,* 82 Wis. 1, 33 A. S. R. 17 and note.

This rule being thus clearly announced, its applicability to the facts here presented remains to be considered. Is the fact of contributory negligence on the part of Casdorph disputed? May two reasonable inferences be drawn from his conduct? Without undertaking to speculate upon what acts or dereliction the order of the court below was predicated, it would appear that defendant relied largely upon the suggestion that decedent, without observing the precaution of stopping, looking or listening for an approaching train, recklessly drove upon the crossing, known by him to be dangerous.

. The evidence tends strongly to prove that the view of the center track, upon which the train was approaching, was to some extent obstructed—although defendant disputes this contention—by the box cars, that the atmosphere was foggy and murky, by reason of which the smoke from the locomotive did not rise as it ordinarily would, and the absence of a signal or warning by the train until decedent was within fifteen or eighteen feet of the *center of the crossing.* It has also been suggested, and reasonably so, that the very fact of Littlepage's automobile passing on to the left of the wagon distracted decedent's attention and enabled Littlepage and Singleton more easily to look over and beyond the box cars and see the smoke of the oncoming locomotive. From these observations, it seems reasonably clear that there was little if anything to attract Casdorph's attention to the danger, so perhaps with his eyes upon the tracks, he drove upon them, as James says, without any sign or warning from the watchman, who stood near the side of the street, probably with his back towards decedent. This circumstance introduces another, possibly the controlling, element in the case; to what extent may a traveler depend upon the absence of the warning signal from the watchman, as he approaches a place of danger.

As the railroad had employed and for eight years kept a watchman at the crossing, during which time decedent had used it "on an average once in ten days, during certain seasons of the year," no reasonable question could arise as to Casdorph's knowledge of the watchman's customary presence

or his duties there.    Travelers under such circumstances have, within certain limits, a right to assume that, in the absence of such signal no train is approaching.    3 Elliott, Railroads (3d Ed.) 516.    "It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances, except in cases where it clearly appears that the traveler has approached the crossing in a careless and heedless manner without the proper regard for his own safety."    *Gundlach* v. *Chicago & N. W. R. Co. et al,* 172 Wis. 438, 179 N. W. 577.    This case, we think, states fairly the principles involved in the present inquiry. There are decisions that go even further in support of defendant's conduct, those, out of which has grown the theory that the absence of the customary signal amounts to an invitation to cross, *Illinois C. R. Co.* v. *Lindgren,* 80 Ill. App. 609; *Chicago & Alton R. Co.* v. *Wright,* 120 Ill. App. 218; McNamara v. *Chicago R. I. & P. Co.* 126 Mo. App. 152, 103 S. W. 1093; *Wiggin* v. *Boston & Maine R. Co.,* 75 N. H. 600, 75 Atl. 103, but for present purposes, at least, it is not necessary to apply that doctrine, but rather the view of the Gundlach Case, that such omission was a circumstance to be considered with all other facts in determining whether decedent exercised that degree of care ordinarily required under the same circumstances.    The latter seems more reasonable, and finds ample support in authority. *Morrissey* v. *B. & M. R. Co.,* 216 Mass. 5; *Chicago etc. R. Co.* v. *Hutchinson,* 120 Ill. 587; *Louisville & Interurban R. Co.* v. *Schuester,* 183 Ky. 504, 209 S. W. 542, 4 A. L. R. 1344, and *Kimball* v. *Friend,* 95 Va. 142, 27 S. E. 904, from which we quote as follows:  "The erection of gates, gongs or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution. And, while courts and text writers differ as to the degree of reliance that may be placed upon the invitation which an open

gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him as if there were no such invitation. The question of negligence in such a case is peculiarly one for the jury.''

It is difficult to credit the argument in defendant's brief that Casdorph took no care whatever of his own safety. He may have acted as prudently as another in the same circumstances, as prudently as Littlepage and Singleton, had they not been fortunate enough to notice the smoke lying low above the box cars. May not prudence have demanded even that he should have directed his eyes towards the road ahead, possibly towards the watchman stationed there for his guidance? ''A traveler is not required to keep his eye in one particular direction for an approaching engine, since direct danger might approach from either way, and it was his duty to observe at the same time the watchman.'' *McNamara* v. *Chicago, R. I. & P. R. Co., supra.* See also *Louisville & Interurban R. Co.* v. *Schuester, supra.* This court, as well as many others, does not follow the so-called Pennsylvania doctrine, that there is an absolute duty to stop, look and listen; as stated in the Canterbury case, since there are many instances where such action would place the traveler in no better position to observe the danger signals than if he merely looked from his moving conveyance, it would often be a useless precaution. May not such have been the case here?

The circumstances discussed in the foregoing paragraphs are sufficient to lead to the reasonable conviction that other proper and justifiable inferences as to decedent's approach to the crossing may have been drawn by the jury, had the facts been left to their consideration. The direction of the verdict, therefore, was not justified by the evidence submitted.

So far we have confined our remarks chiefly to the third point of error specified by plaintiffs, namely, the directing of the verdict instead of submitting the question to the jury. There remain two others: (1) The excluding of evidence tending to prove the customary conduct and practice of the watchman at this crossing to give notice of approaching trains to travelers, and (2) The excluding of evidence tend-

ing to show the condition of the street and railway tracks at the crossing.

Both of these inquiries were raised upon questions directed to Littlepage. The first, relating to the watchman's custom, was objected to and not answered, counsel for plaintiffs stating to the court that they thereby desired to prove by the witness that the watchman made it an invariable practice to stand in the middle of the street and there warn travelers of approaching trains. Such testimony was relevant and admissible, and also an important element of the case. In order to prove reliance by Casdorph to any extent upon the watchman's signal, it was of course necessary to show his acquaintance with the watchman's usual practice. It having already been shown that decedent was accustomed to drive over the crossing at frequent intervals, and that a watchman had been stationed there for eight years or more, we think the evidence proper for the purpose.

As to the second ground of error, the striking out of Littlepage's testimony regarding the condition of the street and crossing, we need only say, that while of small evidentiary value, so far as it relates to the issue, there is no objection to its admissibility. Although counsel give us no information as to their purpose in offering such testimony, it may have been of some assistance to the jury in their consideration of decedent's conduct.

For the reasons assigned, we reverse the judgment, and remand the case for retrial.

ON REHEARING:

By way of reply to the criticism of counsel in their petition for rehearing, this note seems advisable. There is no disposition on our part to hold them responsible for the points in the syllabus criticised by them. The points state the law applicable to the facts in the case, notwithstanding their objection. The restatement and reapplication of a legal principle when appropriate do not warrant condemnation.

In the petition counsel quote only part of section 1661, 3 Elliott, Railroads, (3 rd. ed.) : "The general rule is that it is

not sufficient·to look in one direction, but the traveler is under a duty to look in both directions. The duty to look and listen requires the traveler to exercise care to select a position from which an effective observation can be made." In the same section, the author, after stating the rule affirmed by the authorities, as to the duties of travelers approaching a railroad crossing to look and listen, and the right of a court to direct a verdict for defendant if the performance of the duty is omitted, qualifies the general statement by the additional phrase: "except in cases of a peculiar nature, where there are facts excusing the performance of that duty." And although the failure of a flagman to give the signal to cross, or an express invitation by him to cross does not absolve the traveler from the duty to look and listen, either or both of these omissions "may be sufficient to carry the case to the jury." Elliott, Railroads, (3rd. ed.) Secs. 1651, 1661, citing: *Buchanon* v. *Chicago M. & St. P. R. Co.,* 75 Ia. 393, which supports the text. There the flagman gave plaintiff the signal to cross, and she obeyed although she knew the train was approaching, and it arrived at the crossing before she did, wherefore he stopped her, but the train so alarmed her horse that it ran away and caused the injury for which she sued. Of course, in facts like those in *Dickman* v. *Morgan L. & T. R. & S. B. Co.,* 40 La. Ann. 787, 5 So. 76; *Lake Shore & Mich. So. Ry. Co.* v. *Ehlert, Admr.,* 63 Oh. St. 320; *Allerton* v. *Boston & Maine R. Co.,* 146 Mass. 241; *Baltimore & Ohio R. Co.* v. *Colvin,* 118 Pa. St. 230, in each of which the railroad companys' agents exercised the utmost caution to prevent the collisions, and the court properly held in each case that the negligence of the plaintiff was the proximate cause of the injury.

A traveler must not omit precautions legally necessary for his own safety when about to drive over a railroad crossing "for under all circumstances, he must himself exercise ordinary care, and must not rely entirely upon the acts of others, but, as we have said, what is or is not ordinary care depends very often upon the facts of the particular case. Under the rule just stated, namely, that whether due care was exercised depends·upon the facts of the particular case, the

question whether the traveler stopped at a proper place or the like is generally a question for the jury, but it is sometimes a question of law. If there is but one reasonable inference that men of average intelligence can justly draw from the facts, the question is one of law to be disposed of by the court.'' Elliott, Railroads, (3rd. ed.) Sec. 1661.

Counsel also seem to be of the opinion that we fail to interpret properly the evidence of the lack of reasonable care on the part of Casdorph, and the exercise of reasonable diligence on the part of the flagman. Both Littlepage and Singleton, when in the act of passing over the crossing, or just before or after they had crossed it, saw him, but so far as they could recall, he did not notice them. He was there between the street curb and the ''little house'' occupied by him in cold weather, and although at that time he had in his hands a jack staff with the word ''stop'' at the top, he gave them no signal or warning. ''He was not the regular watchman'' and did not hold it so it could be read by them, or by any one approaching from the direction they were driving. James corroborates Littlepage and Singleton in this and other particulars. The watchman, he says, did halt some taxicabs driving westward towards the crossing, Casdorph approaching it in an easterly direction. When he did so, however, his face was towards James, who was east of the crossing and in a position where he could see it and the railroad track 400 feet west of the crossing, and the watchman, who at the time was standing facing James and who ''showed no indication of recognizing Mr. Casdorph's approach, neither did Mr. Casdorph look that way. He just came right on and the train was coming.''

The record furnishes no substantial support for the statement that while Casdorph was in a place of safety, he could have saved his life, had he heeded the signals given of the approach of the train. There is now no evidence of the giving of any signal until he was within fifteen or eighteen feet of the center of the crossing, and the train 75 feet from it. To avoid a collision in circumstances such as this record pre-

sents would require unusually expeditious action. In any event, however, these facts are for the jury.

Rehearing denied.

*Reversed and remanded.*