# CHARLESTON.

W. B. CROOKSHANK *v.* THE CHESAPEAKE & OHIO RAILWAY COMPANY

(No. 6471)

Submitted May 14, 1929.    Decided May 28, 1929.

*A. D. Duduit,* for plaintiff in error.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for defendant in error.

WOODS, JUDGE:

The plaintiff, W. B. Crookshank, complains of judgment entered by the circuit court of Kanawha county upon a directed verdict in favor of the defendant, Chesapeake & Ohio Railway Company.

The action was brought to recover damages for the destruction of the plaintiff's automobile at a public crossing of defendant's railway tracks immediately west of its station in Charleston, by a west bound passenger train. The plaintiff, accompanied by Dr. C. N. Watts, was traveling westward in the automobile from Charleston to St. Albans, a distance of from twelve to fifteen miles. According to the testimony for the plaintiff (no evidence having been offered by defendant) a traveler going west could see but a short distance along the tracks before arriving within a few feet of the crossing. The plaintiff, who says he looked to the right and left as he approached the crossing, was following immediately behind another automobile which passed over the tracks; just before his automobile reached the first rail of the tracks, the watchman, employed by the defendant to warn travelers of the approach of trains, and whom the plaintiff had observed standing between the tracks looking westward, turned abruptly, with a stop sign raised in his hand, causing the plaintiff to stop his car suddenly with the view of backing it from the track; but the plaintiff being warned by Dr. Watts of a train's approach, both jumped from the car before it could be reversed and barely in time to save their lives from the onrushing train, which struck and almost completely demolished the car. The plaintiff and Dr. Watts say that they heard no signals from the approaching train. The latter saw the stop sign by the side of the watchman, but the former did not observe it until it was raised in warning. The evidence should have gone to the jury on the theory that the plaintiff was acting upon an implied invitation from the

defendant to use the crossing. "The omission of a flagman stationed at a crossing to give the customary stop signal is a circumstance to be considered with all other facts and circumstances in determining the degree of care exercised by an approaching traveler." *Casdorph* v. *Hines,* 89 W. Va. 448. JUDGE LYNCH, in writing the opinion of the Court, stated: "As the railroad had employed and for eight years kept a watchman at the crossing, during which time decedent had used it 'on an average once in ten days, during certain seasons of the year,' no reasonable question could arise as to Casdorph's knowledge of the watchman's customary presence or his duties there. Travelers under such circumstances have, within certain limits, a right to assume that, in the absence of such signal no train is approaching. 3 Elliott, Railroads (3d Ed.) 516. 'It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances, except in cases where it clearly appears that the traveler has approached the crossing in a careless and heedless manner without the proper regard for his own safety.' *Gundlach* v. *Chicago & N. W. R. Co. et al,* 172 Wis. 438, 179 N. W. 577. This case, we think, states fairly the principles involved in the present inquiry. There are decisions that go even further in support of defendant's conduct, those, out of which has grown the theory that the absence of the customary signal amounts to an invitation to cross, *Illinois C. R. Co.* v. *Lindgren,* 80 Ill. App. 609; *Chicago & Alton R. Co.* v. *Wright,* 120 Ill. App. 218; *McNamara* v. *Chicago R. I. & P. Co.,* 126 Mo. App. 152, 103 S. W. 1093; *Wiggin* v. *Boston & Maine R. Co.,* 75 N. H. 600, 75 Atl. 103, but for present purposes, at least, it is not necessary to apply that doctrine, but rather the view of the *Gundlach* case, that such omission was a circumstance to be considered with all other facts in determining whether decedent exercised that degree of care ordinarily

required under the same circumstances. The latter seems more reasonable, and finds ample support in authority. *Morrissey* v. *B. & M. R. Co.*, 216 Mass. 5; *Chicago, etc. R. Co.* v. *Hutchinson*, 120 Ill. 587; *Louisville & Interurban R. Co.* v. *Schuester*, 183 Ky. 504, 209 S. W. 542, 4 A. L. R. 1344, and *Kimball* v. *Friend*, 95 Va. 142, 27 S. W. 904, from which we quote as follows: 'The erection of gates, gongs or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such cross-ings from exercising ordinary care and caution. And, while courts and text writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him as if there were no such invitation. The question of negligence in such a case is peculiarly one for the jury.' '' Again, in the case of *Berkeley* v. *Chesapeake & Ohio Railway Co.*, 43 W. Va. 11, cited by the defendant in error, where the accident occurred at a crossing at which a watchman was maintained, the Court said: ''Had the flagman done anything to induce the appellant to attempt the crossing at the time she was hurt, or anything to throw her off her guard, then the question of her negligence would have been a question for the jury.'' Referring to *Casdorph* v. *Hines, supra*, and *Bonar* v. *Railway Company*, 91 W. Va. 462, JUDGE LIVELY stated in *Cavendish* v. *Railway Company*, 95 W. Va. 501: ''In the *Casdorph* and *Bonar* cases there were watchmen at the crossings upon whom the injured travelers had a right to rely for notice of approaching trains.''

Under this view of the facts and the law applicable thereto, it follows that the judgment herein should be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded for*
*a new trial.*